**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1101-STaL |
| KEVAN HARRY GILMAN, | Bk. No. 1:11-bk-11603-VK |
| Debtor. | Adv. No. 1:11-ap-01389-VK |
| TAMMY R. PHILLIPS; TAMMY R. PHILLIPS, a Professional Law Corporation, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| KEVAN HARRY GILMAN, | |
| Appellee. | |

Argued and Submitted on November 29, 2018
at Pasadena, California

Filed – July 12, 2019

Appeal from the United States Bankruptcy Court

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

---

Appearances:     Charles Quentin Jakob argued for appellants;  Mark E.
                 Ellis of Ellis Law Group, LLP argued for appellee.

---

Before: SPRAKER, TAYLOR, and LAFFERTY, Bankruptcy Judges.

**INTRODUCTION**

Tammy R. Phillips, and her former law firm known as Tammy R. Phillips, a Professional Law Corporation, are judgment creditors of chapter 7[1] debtor Kevan Harry Gilman.[2] Creditors commenced an adversary proceeding against Gilman seeking to except from discharge their judgment claim. The adversary proceeding also included claims for relief objecting to Gilman's discharge under § 727. The court ultimately entered a final judgment under Civil Rule 54(b) granting Creditors the relief they

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure. All Local Rule references are to the Local Rules for the United States Bankruptcy Court for the Central District of California.

[2] For most purposes in this appeal, there is no functional difference between Phillips and her professional law corporation. Unless otherwise indicated, we hereinafter refer to Phillips and her corporation jointly as "Creditors."

requested under § 727(a)(2)(b).

Even though Creditors prevailed on the merits of their § 727(a)(2)(b) claim, they appeal from several orders entered in the adversary proceeding. The orders appealed include: (a) an order denying Creditors' special motion to strike Gilman's answer under California's anti-SLAPP statute; (b) an order denying one of Creditors' two Civil Rule 12(f) motions to strike; (c) an order compelling Phillips' law firm's corporate designee to appear for an additional deposition date; (d) an order denying Creditors' motion to compel Gilman to submit further responses to their interrogatories and their document production requests; (e) an order on Creditors' motion for adversary fees and costs pursuant to California Code of Civil Procedure ("CCP") § 685.040; and (f) an order denying Creditors' Civil Rule 59 motion seeking reconsideration of the adversary fee order.

None of the adversary proceeding orders appealed implicate the merits of the underlying adversary proceeding. Creditors have appealed these orders principally to seek a larger award of attorneys' fees. In this sense, the adversary appeal is a microcosm of the underlying dispute between the parties. That dispute began over 15 years ago and resulted in a damages award against Gilman of merely $8,250. The rest of Creditors' claim consists of millions of dollars in litigation and collection costs – mostly attorneys' fees.

The adversary fee order allowed only $162,613.60 of the $1,395,535.00

3

in adversary fees requested.[3] The bankruptcy court disallowed $942,154.00 in adversary fees as untimely under CCP § 685.080(a) because Creditors did not file a motion seeking recovery of these fees within two years of their incurrence. In a separate published opinion, we affirm the bankruptcy court's disallowance of the $942,154.00 in adversary fees as untimely. In this memorandum, with two relatively minor exceptions, we conclude that the bankruptcy court did not commit reversible error when it disallowed on other grounds an additional $290,767.40 in adversary fees. Accordingly, the adversary fee order is AFFIRMED IN PART, and VACATED AND REMANDED IN PART for further findings, as detailed below.

As for the other adversary orders appealed, Creditors have not persuaded us that the bankruptcy court abused its discretion or otherwise committed reversible error. We therefore AFFIRM all of the other orders appealed.

## BACKGROUND FACTS

In its many different facets, this is a story of litigation gone horribly wrong.

Creditors' claims against Gilman arose from a state court civil action Gilman commenced against Creditors and others. In 2003, Gilman through

---

[3] The bankruptcy court entered separate orders on Creditors' motions for fees incurred in Gilman's bankruptcy case. Creditors' appeals from the case fee orders are the subject of a separate unpublished memorandum decision issued by this Panel.

his wholly owned company known as Lien Medical filed a complaint against Creditors and their client Mike Sweeney in the Los Angeles County Superior Court. The lawsuit sought recovery on a lien for medical services that Sweeney and his health care provider allegedly granted to Gilman under a signed form lien agreement. Creditors and Sweeney later succeeded in transferring venue over this lawsuit to the Placer County Superior Court. Creditors then cross-complained against Gilman based on his incorrect choice of venue. Among other things, Creditors claimed that Gilman violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, et seq. In 2007, the Placer County Superior Court granted Creditors judgment on their cross-complaint, consisting of $7,500 in actual damages and $750 in statutory damages. In 2008, the state court awarded Creditors over $100,000 in attorneys' fees and costs based on work their attorney performed on the lien claim, on the cross-claim, and on appeal.

While these fees might seem disproportionately large in relation to the substantive damages, this was only the beginning. The attorneys' fees and costs Gilman owed to Creditors continued to grow. For all of their judgment enforcement efforts, Creditors claimed entitlement under CCP § 685.040 to recover their reasonable and necessary costs in enforcing their state court judgment.

Gilman commenced his chapter 7 bankruptcy case in February 2011.

In his schedules, Gilman listed Creditors and Sweeney as disputed creditors in the amount of $150,000. However, in their discharge complaint filed in May 2011, Creditors claimed that, predominantly as a result of their judgment enforcement efforts, they were entitled to a judgment against Gilman of no less than $1 million. They included in their discharge complaint claims for relief under §§ 523(a)(2)(A), (4), and (6), and under §§ 727(a)(2), a(4)(A), and (a)(4)(D). They further included a claim for attorneys' fees, based on the additional fees they expected to incur in the adversary proceeding.

After several years of protracted and exceedingly hostile disputes over pleading, discovery, motion practice, and pretrial practice, the bankruptcy court trifurcated the action in April 2016 and set the matter for trial in June 2016. The sole claim tried was Creditors' § 727(a)(2)(B) claim, and the sole issue tried was Gilman's intent. After two and a half days of trial, the bankruptcy court entered judgment in favor of Creditors on this claim in November 2016.[4]

---

[4] The details of the discharge litigation are too voluminous and too tangential to the merits of this appeal to justify our setting them forth at length here. Suffice it to say that the litigation was highly contentious and marked by vitriolic exchanges between the parties' counsel. In its June 2017 adversary fee ruling, the bankruptcy court's comments give some idea of the tone of this action:

> Plaintiffs have filed unnecessary sanctions motions throughout the
> pendency of this adversary proceeding and the related bankruptcy case.

(continued...)

6

Within fourteen days of entry of judgment, Creditors filed their motion seeking compensation for 3,533 hours of legal services provided by their counsel. Ultimately, the bankruptcy court allowed compensation for just over 400 hours of legal services, at the requested hourly rate of $395 per hour. Creditors filed a Civil Rule 59(e) motion seeking reconsideration of the fee order. The bankruptcy court entered an order denying the Civil Rule 59(e) motion without a hearing.

On April 13, 2018, Creditors filed a notice of appeal from the fee order, from the denial of relief under Civil Rule 59(e), and from the other orders discussed below.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court commit reversible error when it denied Creditors' special motion to strike Gilman's answer under

---

[4](...continued)
Not including Plaintiffs' repeated requests for sanctions embedded in nearly every filing by Plaintiffs, Plaintiffs have filed a total of 33 motions requesting sanctions in this adversary proceeding and the related bankruptcy case. Of these 33 motions, only 5 were granted by the Court.

Final Ruling On Fee Motion (June 9, 2017) at p. 8. While we do not have specific sanctions motion numbers for defendant Gilman, it is safe to say that he also was very active in requesting sanctions against Creditors and their counsel.

California's anti-SLAPP statute?

2. Did the bankruptcy court abuse its discretion when it denied one of Creditors' two Civil Rule 12(f) motions to strike?

3. Did the bankruptcy court abuse its discretion when it entered an order compelling Phillips and her law firm's corporate designee to appear for an additional deposition date?

4. Did the bankruptcy court abuse its discretion when it denied Creditors' motion to compel Gilman to submit further responses to their interrogatories and their document production requests?

5. Did the bankruptcy court abuse its discretion when it disallowed most of the fees Creditors timely requested in their motion for fees and costs?

## STANDARDS OF REVIEW

The appeal from Creditors' special motion to strike presents an issue of statutory construction. We review de novo such issues. *Mahakian v. William Maxwell Invs., LLC (In re Mahakian)*, 529 B.R. 268, 274 (9th Cir. BAP 2015).

We review orders on Civil Rule 12(f) motions to strike for an abuse of discretion. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). We review orders on motions to compel discovery under the same standard. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its

8

findings of fact are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We review "de novo questions of law concerning entitlement to attorneys' fees." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis),* 505 B.R. 914, 917 (9th Cir. BAP 2014) (citation omitted). However, we review the amount of attorneys' fees awarded under state law for an abuse of discretion. *Id.*

"It is well established in this Circuit that a reviewing court "will not disturb a bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its discretion or erroneously applied the law." *Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*, 581 F.3d 1090, 1095 (9th Cir. 2009) (quoting *In re Kord Enters. II*, 139 F.3d 684, 686 (9th Cir. 1998)); *Amick v. Bradford (In re Bradford)*, 112 B.R. 347, 353 (9th Cir. BAP 1990). We afford broad deference to the bankruptcy court's determinations on fee awards because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

This deference is especially appropriate in the context of fee awards because the bankruptcy court has the benefit of two distinct but equally

valid perspectives concerning the reasonableness of the fees requested: first, the bankruptcy court observes, in an immediate, particularized, and firsthand basis, the delivery of services in connection with particular matters or hearings, and can thus assess the difficulty of the tasks presented and other factors that should dictate the likely time and skill necessary to produce the services, as well as the quality of the services; second, the bankruptcy court has the added perspective of presiding over the matter in a cumulative sense, and is therefore also uniquely able to assess the overall reasonableness of fees measured by the entirety of the aggregate task. Both perspectives are valid, and the bankruptcy court may employ either, or both, in any given instance.

Accordingly, our deference also extends to the depth of the bankruptcy court's factual findings. It is uniquely the province of the bankruptcy court to determine the level of review and the basis for critique in fee review, and a reviewing court should defer as thoroughly to that decision by the bankruptcy court as it would to any other decision concerning reasonableness of fees, so long as the bankruptcy court's findings are "explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision." *In re Bradford*, 112 B.R. at 353 (9th Cir. BAP 1990) (citing *Louie v. United States,* 776 F.2d 819, 822–23 (9th Cir. 1985)). In other words, consistent with our review of factual matters, we will only reverse or vacate and remand a finding

concerning reasonableness of fees where such finding is illogical, implausible, or without support in the record, *see TrafficSchool.com, Inc.,* 653 F.3d at 832, or where the bankruptcy court, having undertaken a more particularized review of a fee charge, has left us uncertain as to the basis for its determination.

We may affirm on any basis in the record. *Bill v. Brewer,* 799 F.3d 1295, 1299 (9th Cir. 2015).

## DISCUSSION

As mentioned at the outset, Creditors have raised a number of issues on appeal that have no continuing relevance to the merits of the underlying discharge litigation. Nor will they have any impact on the outcome of that litigation. The discharge litigation already has been fully, finally, and conclusively decided in Creditors' favor. The issues have only one other characteristic in common: if Creditors were to prevail, they might be entitled to recover or recoup more of the attorneys' fees they incurred or were ordered to pay to Gilman. We will consider each of Creditors' disparate issues in turn.

**A.  Appeal From Denial Of Special Motion To Strike.**

This is not the first time Creditors have appealed the denial of their special motion to strike. Before we discuss these prior appeals, some background is required. In July 2011, Gilman filed his initial answer to the complaint. Among the three affirmative defenses stated in his answer,

Gilman included an affirmative defense for "Malicious Prosecution –

Offset." The entirety of the affirmative defense states: "Answering

Defendant alleges that if any monies are owed to Plaintiff(s) that such sum

is offset by monies owed to Defendant because of the other specious

allegations contained in Plaintiffs [sic] Complaint." Specifically in response

to this affirmative defense, Creditors filed on July 30, 2011, a special motion

to strike under Cal. Civil Procedure Code ("CCP") § 425.16, which is part of

California's "anti-SLAPP" statute.[5]

By way of their special motion to strike, Creditors sought not only to

have the allegedly impermissible affirmative defense stricken, but also to

obtain attorneys' fees under CCP § 425.16(c), which provides mandatory

fees to a prevailing movant. The majority of Creditors' legal memorandum

in support of their special motion sought to explain why Gilman's

affirmative defense for offset should be treated as a "cause of action"

within the meaning of CCP § 425.16.

The bankruptcy court was not persuaded by Creditors' legal

---

[5] Generally speaking, California's anti-SLAPP statute protects litigants from spurious lawsuits filed for the purpose of infringing on their First Amendment Rights. *See Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (2010) ("A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. 'While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right.'"). (Emphasis added and citation omitted.)

argument. According to the court, the offset affirmative defense was neither a cause of action or a counterclaim within the meaning of the anti-Slapp statute. On October 20, 2011, the bankruptcy court entered an order denying the special motion to strike.

The anti-SLAPP statute contains a subsection providing for a right of immediate appeal. CCP § 425.16(I). Creditors immediately appealed the denial of their special motion to strike to the district court. The district court essentially agreed with the bankruptcy court but was much more emphatic: "[b]efore the Court is a frivolous appeal to a frivolous motion that sought to strike a frivolous affirmative defense, as well as frivolous motions for sanctions." *Phillips v. Gilman (In re Gilman)*, Case No. CV 11-9327 DOC, Doc. No. 30 (Minute Order) (C.D. Cal. April 4, 2012).

The district court explained at length that the California legislature enacted the anti-SLAPP statute to give defendants immunity from **lawsuits** that seek to infringe on the defendants' First Amendment rights. *Id.* (citing *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003)). The district court further explained that the anti-SLAPP statute specifically applied to "causes of action," "complaints," "cross-complaints," and "petitions." *Id.* (citing CCP § 425.16(h)); *see also* CCP § 425.16(b)(1). Based on the plain meaning and underlying purposes of the statute, the district court held that the anti-SLAPP statute did not apply to Gilman's affirmative defense.

Given that the statute was inapplicable, the district court concluded

that Creditors were not entitled to an immediate appeal either under CCP § 425.16(I) or under the federal collateral order doctrine. *In re Gilman*, Case No. CV 11-9327 DOC, Doc. No 30, at pp. 4-5. The district court further ruled that the denial of the special motion to strike was an interlocutory order and that Creditors had failed to establish grounds for leave to pursue an interlocutory appeal. The district court therefore dismissed the appeal for lack of jurisdiction, and denied all of the parties' sanctions motions.

Creditors then appealed to the Ninth Circuit Court of Appeals. But the Court of Appeals similarly dismissed that appeal for lack of jurisdiction. Unlike the district court, the court of appeals did not discuss at all the applicability of the federal collateral order doctrine or the right under California law to immediately appeal the denial of a special motion to strike under CCP § 425.16(I). The court of appeals merely stated that it had no jurisdiction to hear this appeal from an interlocutory bankruptcy court order.[6]

---

[6] If the court of appeals really had thought it was dealing with the denial of a bona fide anti-SLAPP motion, presumably it would have followed its case law allowing immediate appeal from such motions under the collateral order doctrine. *See, e.g., DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013–14 (9th Cir. 2013); *Batzel*, 333 F.3d at 1025, *partially abrogated by statute as recognized in*, *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017)). Thus, the court of appeals' decision disposing of Creditors' interlocutory appeal on jurisdictional grounds seems to suggest that the court of appeals did not consider Creditors' special motion to strike to be a bona fide anti-SLAPP motion. In any event, we do not need to rely on the court of appeals' decision to analyze or resolve the issue on appeal before us.

In their appeal brief filed with this Panel, Creditors reiterate the same arguments they made in the bankruptcy court why, in their view, Gilman's offset affirmative defense qualified as a "cause of action" under the anti-SLAPP statute. They claim that the district court ruling should have no effect on our analysis or resolution of this issue because: (1) the district court's jurisdictional ruling did not reach the merits of their anti-SLAPP motion; and (2) the court of appeals' jurisdictional dismissal of the appeal from the district court's decision effectively stripped the district court ruling of any meaning or effect.

We disagree with both of Creditors' contentions. The district court's determination is law of the case. As we previously have stated:

> Under the law of the case doctrine, a court is barred from reconsidering an issue that already has been decided in the same court or in a higher court in the same case. For the law of the case doctrine to apply, the issue must have been decided, either expressly or by necessary implication. However, even if the law of the case doctrine applies, a court may decide, in its discretion, to revisit the issue if: "(1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence on remand [is] substantially different." *Id.*

*FDIC v. Kipperman (In re Commercial Money Ctr., Inc.)*, 392 B.R. 814, 832–33 (9th Cir. BAP 2008) (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). The doctrine is discretionary, but we routinely follow it unless one of the above-referenced exceptions applies.

15

*Am. Express Travel Related Servs. Co. v. Fraschilla (In re Fraschilla)*, 235 B.R. 449, 454 (9th Cir. BAP 1999), *aff'd*, 242 F.3d 381 (9th Cir. 2000) (citing *United States v. Garcia*, 77 F.3d 274, 276 (9th Cir. 1996)).[7]

Here, Creditors have not shown that the district court's decision regarding the inapplicability of the anti-SLAPP statute was clearly erroneous or manifestly unjust. To the contrary, based on our review of the relevant facts and law, we conclude that the district court decision was manifestly correct and just. Nor have Creditors shown any relevant intervening change in the law or any change in the evidence on this issue after the district court dismissed the appeal. The district court ruled that the anti-SLAPP statute did not apply to Gilman's offset affirmative defense. This ruling is law of the case, and we will follow it.

On this basis, we AFFIRM the bankruptcy court's order denying Creditors' special motion to strike.

## B.     Appeal From Denial Of Civil Rule 12(f) Motion To Strike.

Creditors also filed two motions to strike all or parts of Gilman's answer based on Civil Rule 12(f). Only the second of these motions is at

---

[7] For purposes of bankruptcy appeals and application of law of the case, the district court serves the same appellate role as this Panel, inasmuch as both courts hear appeals from bankruptcy court orders and judgments. *See generally* 28 U.S.C. 158. Considering the policies and purposes underlying the law of the case doctrine, it would make no sense for us not to give the district court's decision the same law of the case effect as we would one of our own decisions. *See generally In re Fraschilla*, 235 B.R. at 454 (explaining underlying policies and purposes of the doctrine).

issue in this appeal, but some knowledge of the first is necessary to understand Creditors' arguments regarding the second. Civil Rule 12(f) provides:

> (f) **Motion to Strike**. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Creditors' first Civil Rule 12(f) motion to strike, filed on July 30, 2011 (and amended on August 9, 2011), sought to strike the entirety of Gilman's original answer based on alleged untimeliness. The bankruptcy court entered an order on September 12, 2011, granting in part and denying in part this motion. The record indicates that Creditors drafted this order for the court. The relevant part of the order provided as follows:

> The motion is DENIED to the extent it requests the answer as a whole be stricken as untimely. The motion is DENIED to the extent it seeks to strike a singular allegation Plaintiffs deemed scandalous and irrelevant. The motion is GRANTED, with leave to amend, to the extent it is directed to Defendant's second affirmative defense for equitable estoppel. Defendant shall have 21 days from the date of entry of this order to file and serve an amended answer.

Order granting in part and denying in part motion to strike (Sept. 12, 2011) at p. 2.

The order was specific as to which parts of the motion to strike it denied and which part it granted. The language regarding leave to amend was not as specific or precise. At the hearing on the first motion to strike, the court made a statement arguably suggesting that it meant for its grant of leave to amend to be broad in scope:

> Now, we'll grant with leave to amend. So you can file if you want an amended answer within -- I don't know 21 days of entering the order properly pleading equitable estoppel if that's what you think you have. Or if you have some other, I guess -- I don't know. I guess equitable estoppel. I don't know what to say about anything other than equitable estoppel.

Hrg. Tr. (Aug. 24, 2011) at 25.

Gilman timely filed an amended answer on October 3, 2011. The amended answer not only amended Gilman's equitable estoppel defense but also added several new affirmative defenses, for failure to mitigate, lack of standing, issue and claim preclusion, and advice of counsel. The amended answer also contained a significantly modified offset defense. That defense no longer was based on alleged malicious prosecution. Instead, it was based on Creditors' alleged failure to provide demands and invoices for what they claimed they were owed, thereby impeding Gilman's ability to liquidate his assets for the purpose of satisfying his debts.

In response to the amended answer, Creditors filed their second Civil Rule 12(f) motion to strike. In relevant part, Creditors claimed that the

parts of the answer Gilman amended beyond his equitable estoppel affirmative defense should be stricken. Creditors maintained that the bankruptcy court's order granting leave to amend was narrow in scope and only permitted Gilman to amend the stricken equitable estoppel defense. Unlike their first motion to strike, this second motion to strike sought monetary sanctions. Creditors claimed that the overbroad amendments to Gilmans' answer were filed in bad faith and violated the Civil Rules and Local Rules. Therefore, Creditors reasoned they were entitled to $4,200, apparently covering the cost of the second motion to strike.

The bankruptcy court held a hearing on the second motion to strike. Afterwards, it entered an order granting in part the motion to strike but only with respect to the amended equitable estoppel defense. Thus, this order effectively rejected Creditors' argument that all amendments to the answer **other** than Gilman's equitable estoppel defense should be stricken as beyond the scope of the bankruptcy court's grant of leave to amend. The order also denied sanctions.

On appeal, Creditors have challenged the order on their second motion to strike to the extent it rejected their argument regarding the scope of the leave to amend. Importantly, they have not challenged the order on their first motion to strike, in which the court granted Gilman leave to amend.

Creditors' arguments on appeal (and the cases that they cite) all

assume that the bankruptcy court's order on the first motion to strike granted only limited leave to amend. They argue that, when a court has granted leave to amend limited in scope, amended pleadings should be stricken to the extent they exceed this scope. But Creditors' assumption is factually and legally unfounded. Nothing included in their opening appeal brief factually or legally establishes that the bankruptcy court limited the scope of the leave to amend it granted.

This problem with Creditors' appellate argument is exacerbated, and rendered fatal, by their failure to provide the transcript from the January 11, 2012 hearing on the second motion to strike. As a result of this failure, we are left to speculate as to any findings or reasoning the bankruptcy court gave at this hearing on the issue of the scope of the leave to amend. Without these findings or reasoning, it is difficult or impossible for us to meaningfully review the bankruptcy court's ruling on this issue. *See McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (9th Cir. BAP 1999). Under these circumstances, "we look for any plausible basis upon which the bankruptcy court might have exercised its discretion to do what it did. If we find any such basis, then we must affirm." *Id.*

Here, the bankruptcy court may well have interpreted its order on the first motion to strike as granting broad leave to amend the answer. We give significant deference to the bankruptcy court's interpretation of its own orders. *Rosales v. Wallace (In re Wallace)*, 490 B.R. 898, 906 (9th Cir. BAP

20

2013) (citing *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011)). Creditors have not offered any reason why we cannot or should not accept this interpretation. Nor did Creditors appeal the leave to amend granted in the order on the first motion to strike.

Accordingly, we AFFIRM the order on Creditors' second Civil Rule 12(f) motion to strike.

## C.     Appeal From Order Granting Gilman's Motion To Compel.

Creditors next argue that the bankruptcy court committed reversible error when it imposed fee sanctions against them and their counsel as part of its order granting Gilman's motion to compel filed on December 21, 2011. The order compelled both Phillips and her law firm's corporate designee under Civil Rule 30(b)(6)[8] to appear for an additional deposition date.

Gilman noticed two depositions: the deposition of Phillips as an

---

[8] Civil Rule 30(b)(6) provides in relevant part:

> *(6) Notice or Subpoena Directed to an Organization*. In its notice or subpoena, a party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization. . . .

Fed. R. Civ. P. 30(b)(6).

individual and that of her corporation's Civil Rule 30(b)(6) designee. Initially, Gilman noticed the two depositions for two different dates. But Creditors filed a motion for protective order, claiming among other things that holding the two depositions on two different dates was burdensome and wasteful. In response to the motion, Gilman re-noticed the two depositions for the same date: October 26, 2011. Ultimately, the bankruptcy court denied Creditors' motion for protective order.

On October 26, 2011, Phillips appeared for both depositions. She was represented at the depositions by Creditors' counsel of record Charles Quentin Jakob. Phillips identified herself as her corporation's Civil Rule 30(b)(6) designee. At the outset of the corporation's deposition, when asked to confirm whether there was some other individual the corporation could designate in addition to her regarding the facts underlying Creditors complaint, Phillips responded "I'm it." After a few hours of deposition testimony, and after the parties returned from their lunch recess, Gilman asked a series of questions seeking information about the facts underlying Creditors' complaint. To some of these questions, Phillips responded with "I don't know" or I don't recall" or with similar types of responses. At this point, Jakob stepped in and stated on the record that he was volunteering himself as an additional Civil Rule 30(b)(6) designee. He said he was offering this, in part, because he feared Gilman otherwise would argue that the Creditors lacked knowledge and facts to support their complaint.

22

Initially, Gilman resisted the corporation's attempt to identify an additional designee. Gilman claimed that it was unfair and improper for Phillips to present herself as the sole corporate designee, and to provide a number of hours of deposition testimony in that capacity, only to add an additional designee when, during the deposition testimony, she was unable to answer a number of questions. Jakob contacted the bankruptcy court by telephone while the deposition was in progress to see if the court immediately could resolve the dispute. However, the court was unavailable, so the parties resumed Phillips' corporate designee deposition. Shortly thereafter, they took a recess. Immediately after the recess, Gilman concluded his examination of Phillips as the corporate designee and turned the witness over to Jakob for examination.

Later on in the afternoon, while Jakob still was conducting his examination of Phillips, the court returned Jakob's telephone call and proceeded to address the dispute. After hearing argument, the court opined that there was nothing per se preventing the corporation from designating an additional witness to speak on its behalf. The court also said that Gilman could reserve for another day any objections it had to the manner and timing of the corporation's designations and any request for sanctions it later cared to file. With the court still on the telephone line, the parties then discussed moving forward with the three depositions: (1) Phillips' ongoing corporate designee deposition; (2) Jakob's anticipated

corporate designee deposition; and (3) Phillips' deposition as an individual. The court, in effect, stated that after Jakob finished his examination of Phillips as a corporate designee, the parties then should try to proceed with Phillips deposition as an individual, in an attempt to prevent the need for her to make a repeat appearance on a different date. The court further indicated that it would be appropriate to schedule Jakob's corporate designee deposition for another day. In response, Jakob conceded that Gilman was entitled to additional time to take the deposition.

After the court ended the telephone call with the parties, Jakob expressed his preference to finish all three depositions that evening. But Gilman's counsel said he could not because of other preexisting work obligations. According to Creditors, during the remaining course of the October 26, 2011 deposition, Jakob offered four other dates within the next several days he was able to appear for his deposition. Gilman's counsel promised to inform his colleagues of the offered dates as soon as the deposition ended for the day. Meanwhile, Jakob apparently finished his examination of Phillips as corporate designee at some time between 4:00 pm and 5:00 pm. Gilman's follow-up questions of Phillips as corporate designee took until 5:13 pm. At that point, the deposition ended without any specific agreement regarding when (or whether) Jakob and Phillips (in her individual capacity) would reappear for deposition.

When Gilman's counsel later contacted Jakob to discuss prospective

24

dates for the two remaining depositions, Phillips and Jakob took the position that Gilman had forfeited any entitlement to take the two additional depositions because he did not complete them on the date the two depositions originally were scheduled and because Gilman did not agree to one of the four dates Jakob had proposed during the October 26, 2011 deposition. Jakob further indicated that he would agree to discuss additional deposition dates only if: (1) Gilman agreed to limit his examination questions to those Gilman asked Phillips on October 26; or (2) Gilman paid him for his deposition appearance and testimony.

After the parties met and conferred in accordance with governing rules, Gilman filed his motion to compel on December 21, 2011. The bankruptcy court held its hearing on the motion to compel on February 1, 2012. During the hearing, the court ruled that it would grant the motion to compel and impose sanctions of $6,120. The court explained that the deposition time on October 26, 2011, had all been used up by a combination of factors, including Phillips' corporate designee deposition, Jakob's "cross-examination" of Phillips as corporate designee and the dispute and telephone discussion with the court regarding the belated identification of Jakob as an additional corporate designee.

The court specifically held that Phillips and Jakob had acted unreasonably and that their refusal to offer additional dates for their depositions was not substantially justified. Having reviewed the deposition

25

transcript excerpts provided by Gilman with his motion, the bankruptcy court pointed out there was no opportunity to question Phillips in her individual capacity that day. The court also pointed out that, given the timing of Jakob's volunteering to serve as another corporate designee and the issues arising from that timing, Gilman was entitled to another deposition date for Jakob. The court further noted that, when Phillips initially designated herself as her corporation's sole designee for the deposition, she had an obligation under Civil Rule 30(b)(6) to prepare herself and to be knowledgeable on the relevant subject matter of the deposition. When it became apparent that Phillips was not adequately prepared to answer all questions, the court noted that the corporation could designate a new witness, but the corporation then had to make that new witness reasonably available. Nor could Phillips dictate the timing and terms under which the additional Civil Rule 30(b)(6) witness would appear.

On appeal, Creditors concede that the bankruptcy court duly exercised its authority under Civil Rule 30(d)(1)[9] to enter an order

<hr>

[9] Civil Rule 30(d)(1) provides:

(1) Duration. Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

(continued...)

requiring Phillips and Jakob each to appear for an additional day of deposition. Creditors also have not effectively challenged the narrative of events the bankruptcy court relied upon (described above) in awarding Gilman $6,120 in attorneys' fees as sanctions against Phillips and Jakob for Gilman having to prepare and prosecute the motion to compel. Creditors nonetheless assert the court abused its discretion in awarding sanctions under Civil Rule 37(a)(5)(A).[10]

---

[9](...continued)
Fed. R. Civ. P. 30(d)(1).

[10] Civil Rule 37(a)(5)(A) provides in relevant part:

**( 5) Payment of Expenses; Protective Orders.**

**(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. But the court must not order this payment if:

(I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

(continued...)

Creditors claim that Phillips' and Jakob's refusal to offer any additional deposition dates was "substantially justified" even if they did not ultimately prevail on the issue. They claim that Phillips only was obliged under Civil Rule 30(d)(1) to appear on a single day – October 26, 2011 – as Gilman had noticed the depositions. Once that day was complete, Creditors claim, both Phillips and her corporation satisfied their Civil Rule 30 obligation to appear for the deposition as noticed. Creditors insist that, absent a stipulation or further court order, neither Phillips nor the corporation was obliged to offer to appear for further deposition of either herself or her corporation.

Under Civil Rule 37(a)(5)(A), when the court grants a motion compelling discovery, the court must award the prevailing party its fees and costs incurred in prosecuting the motion unless the losing party's position was "substantially justified." *See Hylton v. Anytime Towing*, Case No. 11CV1039 JLS (WMc), 2012 WL 3562398, at *3 (S.D. Cal. Aug. 17, 2012).[11] A litigant's opposition to discovery is substantially justified if he or she has a "reasonable basis both in law and fact" for his or her position. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

---

[10](...continued)
Fed. R. Civ. P. 37(a)(5)(A).

[11] Civil Rule 37(a)(5)(A) identifies two other exceptions to the mandatory imposition of sanctions, but Creditors have not argued that either of them applied here.

Here, the bankruptcy court found that Phillips and Jakob had acted unreasonably and without substantial justification. Creditors' argument challenging this finding is devoid of merit. The noticed depositions were not completed on October 26, 2011 largely because of Phillips' and Jakob's conduct. Furthermore, Phillips and Jakob knew Gilman was entitled to more time to conduct the depositions. Phillips and Jakob effectively admitted this during the October 26, 2011 telephone conference with the court. Nothing in Civil Rule 30(d)(1) entitled Phillips or Jakob unilaterally to dictate the terms or timing of any future deposition appearances or to withhold their cooperation in rescheduling the depositions.

In sum, Gilman's entitlement to take the depositions was obvious, and Phillips' withholding of cooperation unless and until Gilman obtained a court order was not a reasonable or justified litigation position. To hold otherwise would undermine the policies and purposes underlying Civil Rule 37(a)(5)(A). Those policies and purposes are aimed at motivating the parties to cooperate in the discovery process, to act reasonably, and to minimize court intervention. *See* 8B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2288 (3d ed. 2017) (describing underlying policies and purposes of rule).

Accordingly, we AFFIRM the bankruptcy court's order granting Gilman's motion to compel and imposing sanctions.

**D.     Appeal From Order Denying Creditors' Motion To Compel.**

In 2013, the bankruptcy court granted Creditors leave to file a supplemental complaint objecting to Gilman's discharge. One of the parties' many discovery disputes arose in late 2014 over Gilmans' responses to Creditors' interrogatories and document production requests pertaining to the supplemental complaint. Generally speaking, Creditors claimed that Gilman intentionally and in bad faith served insufficient responses in order to increase litigation costs and cause delay. Creditors also complained that Gilman's objections to many of the discovery requests on the ground of relevance were based on an unreasonably narrow concept of relevance. Creditors further maintained that many of the objections in Gilman's discovery responses were insufficiently specific and qualified as impermissible boilerplate responses, which constituted a waiver of the objections. In addition, Creditors assailed Gilman's assertion of various privileges and rights to privacy under state law. According to Creditors, the privileges and privacy rights asserted either were inapplicable to Creditors' objection to discharge claims or, alternately, had been waived.

On appeal, Creditors claim that the bankruptcy court's findings supporting its denial of the motion to compel were clearly erroneous. They also claim that the Local Rules the bankruptcy court relied on in denying the motion to compel are at odds with the Civil Rules governing discovery and discovery sanctions. They further claim that the denial of their motion

was an inappropriate sanction for their violation of a Local Rule because the bankruptcy court did not adhere to the legal standards for Local Rule-based sanctions articulated in *Zambrano v. City of Tustin*, 885 F.2d 1473 (9th Cir. 1989).

We do not need to address any of Creditors' arguments on appeal in order to affirm the denial of their motion to compel. A denial of a motion to compel discovery will not be disturbed on appeal absent "the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett*, 296 F.3d at 751 (citing *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996)). Without a showing of prejudice, the court of appeals will not consider overturning the denial of a motion to compel even when that motion is accompanied by a request for sanctions. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 975–76 (9th Cir. 2017); *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1102 (9th Cir. 1981). The denial of Creditors' motion to compel obviously did not prejudice the outcome of this litigation against Creditors. They **prevailed**. They successfully obtained a judgment denying Gilman his discharge. Under *Hallett*, *Campidoglio* and *Bollow*, we AFFIRM the denial of Creditors' motion to compel.

E.     **Appeal From Order On Creditors' Motion For Fees And Costs.**

In their complaint, Creditors included a claim for relief for attorneys' fees. In February 2015, Creditors filed a motion for a partial judgment on

31

the pleadings. This motion sought partial judgment on the attorneys' fees claim for relief. The motion did not request an immediate award of fees. It only sought a general determination that Creditors were entitled to recover their fees and costs incurred in the discharge litigation. The court granted the motion by order entered April 29, 2015.

Prior to the June 2016 trial in Creditors' discharge action, the bankruptcy court in April 2016 trifurcated the action and set for trial only Creditors' § 727(a)(2)(B) claim. The sole issue tried was Gilman's intent. On November 23, 2016, after a two and a half day trial, the bankruptcy court entered its judgment sustaining Creditors' objection to discharge based on § 727(a)(2)(B). The court later entered an order pursuant to Civil Rule 54(b) providing for entry of a final judgment denying Gilman his discharge under § 727(a)(2)(B).

Creditors filed their motion for an award of attorneys' fees on December 7, 2016. Creditors requested fees, in aggregate, of $1,395,535, consisting of 3,533 hours of legal services at a rate of $395 per hour. According to Creditors, various (undescribed) "billing judgment" adjustments they made to their lodestar fee request reduced the fees they were requesting from 4,064.5 hours to 3,926.17 hours. They then further reduced their request by an across-the-board 10% billing judgment deduction.

Gilman filed an opposition to the fee motion on February 10, 2017.

Gilman's seven-page opposition asserted that Creditors' fee motion was premature. Gilman claimed that Creditors should wait until all of their pending appeals related to the adversary proceeding had run their course before seeking fees in the adversary proceeding. He further posited that any award of fees based on CCP § 685.040 should be determined in state court rather than in federal court. Gilman also generally attacked Creditors' litigiousness and the reasonableness of the fees they incurred, but the specifics of his reasonableness argument pertained to Creditors' companion fee motion in the main bankruptcy case and not to the fee motion filed in the adversary proceeding. In short, the opposition to the fee motion set forth no specific objections to any of the adversary fees Creditors requested.

The bankruptcy court held a hearing on the fee motion on June 7, 2017. Afterwards, the court entered on June 13, 2017, its order awarding Creditors $162,613.60 in fees and $3,839.98 in costs. The court explained why it disallowed the remainder of the fees and costs requested in a separate ruling entered on June 9, 2017.[12]

As the court noted, Creditors based their request for fees and costs on CCP § 685.040, which generally provides for recovery of attorneys' fees incurred in enforcing a judgment when the underlying judgment includes

_____

[12] The final fee ruling effectively adopted the contents of the bankruptcy court's tentative adversary fee ruling issued shortly before the June 7, 2017 hearing.

33

a fee award.[13] In turn, CCP § 685.080 specifies how and when a judgment creditor can seek recovery of fees and costs by motion.[14]

The bankruptcy court disallowed 2,385.20 hours in fees ($942,154) as being untimely requested. The court relied on the deadlines set forth in CCP § 685.080(a), which provides that, "[t]he [costs] motion shall be made before the judgment is satisfied in full, but not later than two years after the costs have been incurred." Based on this statute, the bankruptcy court disallowed all fees Creditors incurred before December 7, 2014 (two years before the December 7, 2016 filing of Creditors' fee motion).

---

[13] CCP § 685.040 provides in relevant part:

 Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5.

[14] CCP § 685.080 provides in relevant part:

a) The judgment creditor may claim costs authorized by Section 685.040 by noticed motion. The motion shall be made before the judgment is satisfied in full, but not later than two years after the costs have been incurred. . . .

(b) The notice of motion shall describe the costs claimed, shall state their amount, and shall be supported by an affidavit of a person who has knowledge of the facts stating that to the person's best knowledge and belief the costs are correct, are reasonable and necessary, and have not been satisfied. . . .

(c) The court shall make an order allowing or disallowing the costs to the extent justified under the circumstances of the case.

Aside from those amounts disallowed as untimely, the bankruptcy court also disallowed roughly 62% of the remaining fees Creditors requested. Virtually all of the additional disallowed fees were disallowed as excessive, unreasonable, or not reasonably related to Creditors' judgment enforcement efforts.

Creditors prepared and attached to their opening brief a chart showing the "timely" fees the court disallowed, categorized by activity in the same manner the bankruptcy court categorized them in its June 9, 2017 fee ruling. Gilman has not challenged the accuracy of Creditors' chart, and it appears accurate, so we have relied on it to facilitate our review of the bankruptcy court's fee ruling. We address below Creditors' arguments on appeal challenging the award of fees and costs.[15]

### 1.    Challenge Based On Gilman's Alleged Forfeiture Of Issue.

Creditors point out that Gilman's opposition to their fee motion only posed a barebones general objection to the reasonableness of their adversary fees. Creditors also note that the few specifics discussed in

_____

[15] After the court entered its adversary fee order, Creditors filed a motion seeking reconsideration of that order under Civil Rule 59(e). The bankruptcy court denied that motion without a hearing by order entered March 30, 2018. Creditors' notice of appeal indicated that they wanted to challenge on appeal the denial of that motion. But Creditors made no arguments in their opening appeal brief specifically and distinctly challenging the denial of the Civil Rule 59(e) motion, so we will not address it. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010) (declining to address matters not specifically and distinctly discussed in the appellant's opening brief); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (same).

Gilman's opposition pertained to the fees Creditors incurred in the main case and not in the adversary proceeding. Creditors further note that Gilman did not submit any evidence to support his objection. Creditors claim that, under these circumstances, the bankruptcy court should not have "sua sponte" disallowed any adversary fees on the basis of reasonableness, excessiveness, or their relationship to enforcement of Creditors' judgment. Alternately stated, Creditors claim that the bankruptcy court impermissibly acted as Gilman's advocate when it reviewed their requested adversary fees and found cause to disallow them.

Contrary to Creditors' suggestion, the bankruptcy court was not obliged to rubber-stamp Creditors' fee request. Creditors rely on *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), and *Gwaduri v. Internal Revenue Service*, 362 F.3d 1144 (9th Cir. 2004). Citing these two cases, Creditors contend that the bankruptcy court abused its discretion by advocating on behalf of Gilman. As Creditors put it, "[i]f opposing counsel cannot come up with specific reasons for reducing a fee request, the courts should not intervene." Opening Br. at 29-30.

Neither *Moreno* nor *Gwaduri* actually support Creditors' position. In *Gwaduri,* the Ninth Circuit stated:

> Given the overwhelming volume of work which today confronts our courts . . ., we do not generally favor requiring judges in fee application proceedings to search out and research arguments that the other side does not make or sua sponte to

initiate an opposition to a fee request where none is offered by the party affected, at least in the absence of a showing of injustice or hardship.

362 F.3d at 1146. *Gwaduri* concluded that the review of the appropriate amount of fees to award was a matter of discretion. *Id*.

Meanwhile, *Moreno* held:

We are well aware that awarding attorneys' fees to prevailing parties in civil rights cases is a tedious business. And it may be difficult for the district court to identify the precise spot where a fee request is excessive. But the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices. If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut.

534 F.3d at 1116. However, like *Gwaduri*, *Moreno* ultimately held that the question of the appropriate amount of fees to award was a matter of discretion: "The district court has discretion to determine the appropriate fee award, because its familiarity with the case allows it to distinguish reasonable from excessive fee requests." *Id.*

More importantly, unlike *Moreno*, the denial of discharge action was not a civil rights case, nor was it a "normal" case in the sense *Moreno* meant. Creditors' fee request had nothing to do with recovery of fees by a

37

prevailing civil rights plaintiff under 42 U.S.C. § 1988. Indeed, there is no right to recover attorneys' fees in an action under § 727. Instead, the fee request was governed by CCP § 685.040. That statute only permits the allowance of fees as costs to the extent they are both reasonable and necessary to enforce the judgment. As for normality, *Moreno* explained:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.

*Moreno*, 534 F.3d at 1112.

Here, Creditors and their counsel have not acted in an economically rational manner. They have "spent"millions of dollars in attorneys' fees attempting to preserve their rights in a judgment claim in the original amount of roughly $150,000. That judgment claim, itself, mostly consisted of litigation and collection costs made up of attorneys' fees. Only $8,250 of that judgment claim consisted of actual and statutory damages. The rest was litigation and collection costs. The mind boggles at the inflation of this $8,250 damages award into a multimillion dollar claim based predominantly on Creditors' appetite for litigation and incurring fees. The totality of the facts surrounding this case, including the aggregate amount of fees sought, wholly warranted the court's exercise of its discretion to examine the reasonableness of the fees requested.

At bottom, the bankruptcy court had a duty to determine what amount of fees "could reasonably have been billed to a private client." *Moreno*, 534 F.3d at 1111 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Creditors repeatedly admit that this is the correct standard in their opening brief. However, no reasonable client willingly would have accepted responsibility for the fees Creditors have incurred pursuing Gilman in the adversary proceeding. Quite obviously, Creditors willingness to incur these fees arose from their counsel's belief that they could be recovered from Gilman rather than Creditors, via an award under CCP § 685.040.

In short, neither of the Ninth Circuit decisions on which Creditors rely support their claim that the bankruptcy court here lacked the power to review the reasonableness of the requested fees. The bankruptcy court's exercise of its discretion to disallow the fees was not error. Indeed, the California statute on which Creditors' adversary fee request was based – CCP § 685.040 – contemplates the exercise of such discretion and the disallowance of any fees that are unreasonable or unrelated to judgment enforcement. Similarly, CCP § 685.080(c) directs the court to allow or disallow fees "to the extent justified under the circumstances of the case."

Creditors next claim that CCP § 685.070 prohibited the bankruptcy

court from sua sponte disallowing any portion of their adversary fees.[16] Creditors primarily rely on Subdivision (d) of this statute, which provides: "[i]f no motion to tax costs is made within the time provided in subdivision (c), the costs claimed in the memorandum are allowed." Cal. Civ. Proc. Code § 685.070(d). But Creditors' fee motion did not invoke the memorandum of costs procedure governed by CCP § 685.070. Instead, Creditors' fee motion invoked CCP § 685.080, which governs motions for costs. As set forth above, that statute affords the court with discretion to consider the appropriate amount of fees to award regardless of whether the adverse party opposes the motion. CCP § 685.080 simply does not contain any subdivision similar to CCP § 685.070(d).

Therefore, we reject Creditors' contention that the bankruptcy court was powerless to review their fee application to determine the appropriate amount of fees to award.

---

[16] CCP § 685.070 sets forth a procedure for filing memoranda of costs. The memoranda of costs procedure permits a judgment creditor to claim certain costs as a matter of right, including attorneys' fees if permitted under CCP § 685.040. The memoranda of costs procedure under CCP § 685.070 is distinct from the motion for costs procedure set forth in  CCP § 685.080. The latter is discretionary, whereas the former is mandatory unless the judgment debtor timely and successfully objects. *Compare* CCP § 685.070 *with*  CCP § 685.080; *see also Lucky United Props. Inv., Inc. v. Lee*, 213 Cal. App. 4th 635, 643 (2013) (noting distinction between mandatory and discretionary cost recovery under the statutes).

**2.      Challenge Based On Hourly Rate Multiplier "Poison Pill."**

Creditors also contend that, when the state court awarded fees in the state court litigation, it ruled that their counsel was entitled to a fee enhancement of his hourly billable rate The following statement is representative of their claims:

> In the interest of billing judgment and to avoid undue burden on the Court, Plaintiffs are conditionally waiving claims to fee enhancement multipliers for complexity and delay and risk of nonpayment. Plaintiffs believe the propriety of the latter type of multiplier under state law is collateral estoppel. It was vigorously argued and determined in the state court. Should Defendant attempt to challenge the lodestar and burden this Court and Plaintiffs with nitpicking, Plaintiff's request the Court respond by awarding a multiplier of 1.5 to any resulting lodestar award.

Declaration of Charles Jakob (Dec. 7, 2016) at ¶ 95.

Creditors maintain that the bankruptcy court, by considering the reasonableness of the fees incurred, triggered this "poison pill" thereby entitling their counsel to 1.5 times what would be his ordinary fee award. Creditors additionally insist that the bankruptcy court abused its discretion by not awarding their counsel the amount of this fee enhancement.

Creditors' poison pill argument is devoid of merit. Creditors failed to present to the bankruptcy court, or this Panel, the alleged state court rulings on which their so-called fee enhancement entitlement was based. In short, we don't know what these rulings were or what they said. Under

41

these circumstances, there is no evidence in the record to support Creditors' contention that the bankruptcy court abused its discretion by denying their claimed fee enhancement. *See Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512 & n.5 (9th Cir. 2001) (holding that absence of evidence in record to support appellant's argument on appeal mandated affirmance); *see also Kirschner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988) ("We are here concerned only with the record before the trial judge when his decision was made.").

### 3. Specificity Challenge – In General.

Creditors next challenge the specificity of the bankruptcy court's ruling regarding the fees disallowed. According to Creditors, the court's findings were insufficient to support the large deductions in fees it imposed. In large part, Creditors rely on *Moreno* to support their contention regarding the insufficiency of the court's findings. *Moreno* very generally stands for the proposition that, the larger the deduction in fees, the more detailed the explanation of the deductions must be. As *Moreno* explained:

> When the district court makes its award, it must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible. As *Hensley* described it, the explanation must be "concise but **clear**." 461 U.S. at 437, 103 S. Ct. 1933 . . . . Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected.

42

*Id.* at 1111 (emphasis in original). Thus, the critical question we need to answer is whether the court's fee ruling generally contained a "concise but clear" explanation for the deductions. For the explanation to be considered clear, it must be detailed enough under the circumstances of the case to permit us to conduct a meaningful appellate review. *Id.* at 1114.

At the same time, so long as meaningful review is possible, that review must be conducted keeping in mind that the bankruptcy court's superior knowledge of the underlying case and the litigants entitles it to a great deal of deference. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) (holding that the bankruptcy court enjoys considerable discretion in determining the reasonableness of the time spent given its familiarity with the case); *see also Moreno*, 534 F.3d at 1116 ("The district court has discretion to determine the appropriate fee award, because its familiarity with the case allows it to distinguish reasonable from excessive fee requests"); *Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1242 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983) (same).

Creditors similarly assert that the court per se abused its discretion by disallowing more than 10% of their requested fees overall without providing a more detailed explanation for the disallowance of those fees. As Creditors put it, any disallowance of more than 10% "triggers the requirement for a heightened explanation for any reductions in claimed fees," and this heightened explanation always must do more than state, in

conclusory terms, that the fees were unreasonable or excessive. Opening Br. at 35-36.

As a threshold matter, Creditors' description of the entirety of the bankruptcy court's fee ruling as conclusory is inaccurate. As a whole, the court's fee ruling is over eight pages long, with seven of those pages devoted to review of the individual fee categories set forth in Creditors' fee application. As to each billing category, the bankruptcy court clearly reviewed the fees and gave a sufficiently detailed explanation of its reasoning for disallowing the fees.

Moreover, Creditors' reliance on *Moreno* is misplaced. Unlike *Moreno*, the overall nature and contentiousness of this case, on a matter generating a vast amount of fees on a relatively small substantive claim, gives us vital insight into, and an understanding of, the basis for the bankruptcy court's disallowance of fees. As we stated above, no reasonable client willingly would have accepted responsibility for the fees Creditors have incurred pursuing Gilman in the adversary proceeding. To the contrary, Creditors' litigiousness obviously arose from their counsel's belief that the fees would be recovered from Gilman rather than Creditors, via a fee award under CCP § 685.040.

Therefore, considered in their entirety, the bankruptcy court's unreasonableness and excessiveness findings are adequately explained. They generally are sufficient to permit us to conduct a meaningful review,

44

which is the acid test for the sufficiency of findings not only in this context, *Moreno*, 534 F.3d at 1112, but also in the review of findings in other contexts. *See, e.g.*, *Amantea-Cabrera v. Potter*, 279 F.3d 746, 750 (9th Cir. 2002) ("If the district court's findings are sufficient to indicate the factual basis for its ultimate conclusion, in light of the record viewed in its entirety, then it is not clearly erroneous."); *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001) ("Conclusory and unhelpful findings of fact do not necessarily require reversal if the record supports the district court's ultimate conclusion."); *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1051 (9th Cir. 1985) ("A district court's failure to make express findings does not require a remand if "a complete understanding of the issues may be had [from the record] without the aid of separate findings.").

4.      **Challenges To Court's Category-By-Category Fee Rulings.**

The bankruptcy court rendered specific rulings as to each of Creditors' fee categories. Creditors do not challenge all of them, inasmuch as the court ruled in Creditors' favor as to some them. We address below only those that Creditors specifically have challenged.

a.      **Category B – Creditors' Cross-Motion To Disqualify Opposing Counsel.**

The fees Creditors incurred in this billing category arose from a motion to disqualify Gilman's counsel. Creditors asserted that Gilman's counsel needed to be disqualified from representing Gilman because his

counsel also was representing a creditor of Gilman's: Wells Fargo Bank. According to Creditors, Gilman's counsel had a direct and impermissible conflict of interest because Wells Fargo Bank would benefit if Gilman were to lose in the objection to discharge action – the action in which his counsel was supposed to defend him. Creditors filed their motion to disqualify on the heels of a disqualification motion filed by Gilman seeking to disqualify Creditors's counsel under the witness-advocate rule. Creditors directly linked the two "cross-motions" for disqualification by asserting that, if the court were to grant Gilman's disqualification motion, the court also should grant Creditors' disqualification motion, in order to "level the playing field." Memorandum In Support of Conditional Motion to Disqualify (Dec. 4, 2014) at 13:8-9.

In this category, the bankruptcy court recognized 39 hours as timely requested. Of this amount, the court disallowed all 39 hours as "not necessary for the enforcement of Plaintiffs' judgment and, as such, the fees requested related to this motion are unreasonable." Fee Motion Ruling (June 9, 2017) at 2. On its face, the court's joint determination regarding necessity and reasonableness appears to be a question of fact, and Creditors refer to it as such in their opening appeal brief.

The court's findings in this category were specific enough to permit us to meaningfully review the court's ruling. We well understand the court's concerns about the fees incurred in this category, as explained

46

immediately above. Creditors assert that the bankruptcy court was not permitted to "second-guess" the prevailing party's judgment regarding which litigation tasks to undertake. We already have explained above that the bankruptcy court was not obliged to rubber stamp Creditors' requested fees.

Creditors argue that the motion was meritorious and was necessary to "neutralize" the threat posed by Gilman's motion to disqualify Creditors' counsel. The bankruptcy court viewed the cross-motion differently, as nothing more than a tit-for-tat response to Gilman's disqualification motion. Given the litigiousness and vitriolic posturing undertaken by both sides in the adversary proceeding and the economically irrational manner in which Creditors incurred fees in the action, it was not illogical, implausible or factually unsupported for the bankruptcy court to view Creditors' disqualification motion as it did and to disallow the fees in this category on that basis.

Relying on the same argument and legal authority set forth in his appeal from the fee orders in the main bankruptcy case (CC-18-1066), Creditors claim that the bankruptcy court should have held that any and all fees incurred in an action brought to "enforce" the judgment should be considered necessary to enforce the judgment. But the case on which Creditors rely in the main case fee appeal, *Globalist Internet Techs., Inc. v. Reda*, 167 Cal. App. 4th 1267 (2008), does not support their claim. To the

contrary, it supports the bankruptcy court's discretion under California law to determine both the reasonableness and necessity of the fees incurred based on the surrounding circumstances. *See id.* at 1276. As set forth above, the surrounding circumstances here supported the bankruptcy court's fee ruling in this category.

In sum, none of the arguments Creditors have raised persuade us that the bankruptcy court abused its discretion in disallowing all of the fees in this billing category.

**b.      Category C – Creditors'  Discovery Motions Re Supplemental Pleadings.**

The fees incurred in this category relate to Creditors' motion to compel Gilman to submit additional responses to Creditors' interrogatories and document production requests. The bankruptcy court's denial of this motion is the subject of Section D, above. In this category, the bankruptcy court recognized all 171.8 hours as timely requested but disallowed all 171.8 hours. In disallowing these fees in their entirety, the bankruptcy court noted that the motion to compel was denied without prejudice on procedural grounds and that Creditors made no attempt to refile the motion thereafter. The bankruptcy court thus concluded that "the motion was unnecessary to resolution of the proceeding/enforcement of Plaintiffs' judgment, and these fees were not reasonably incurred."

Creditors first argue that the denial of the motion was an insufficient

basis for disallowing these fees. But the bankruptcy court did not disallow the fees merely because the motion was denied. Instead, the court disallowed them because, in part, Creditors made no effort to correct the procedural defect and refile the motion. Creditors complain that it was "palpably absurd" for the bankruptcy court to have relied upon their failure to refile the motion when they had filed the motion on the last day for filing discovery motions. However, Creditors have never adequately explained why they waited until the deadline for filing discovery motions to file this motion to compel. In fact, the record reflects that it could have been filed well in advance of the deadline. The litigants engaged in months of back and forth over Gilman's disputed discovery responses, and their counsels' efforts to meet and confer effectively ended in December 2014. Yet, Creditors did not file their motion to compel until May 11, 2015 – the discovery motion deadline. Creditors offered no explanation why it took them nearly five months to file their motion to compel or why they waited until the discovery motion cutoff date.

Moreover, Creditors also have never explained why, if the motion to compel was necessary to obtain important and relevant information for the litigation, they did not seek a continuance of the court's discovery motion deadline in order to further pursue the discovery dispute. Instead, they abandoned the discovery motion after spending 171.8 hours on the dispute. This abandonment exemplifies the economically irrational manner in

49

which Creditors prosecuted the entire lawsuit. The bankruptcy court found that this entire billing category was not reasonably necessary to enforce the judgment, where Creditors spent 171.8 hours to file a deficient discovery motion, in a matter in which they prevailed without the materials sought. On this record, we cannot say that this finding was clearly erroneous.

Creditors next argue that the court disallowed the fees related to their motion to compel as a sanction for their filing the motion without complying with the court's Local Rules. According to Creditors, such sanctions only could be imposed if they violated the Local Rules in bad faith. But this argument mischaracterizes the basis of for the court's disallowance, which we already have described above. The bankruptcy court did not sanction Creditors. It found that their fees in this category were not reasonably necessary to enforce Creditors' judgment.

Finally, the court's findings in this category were specific enough to permit us to meaningfully review the court's ruling. Considered in context and in light of the entirety of the record, we understand the court's basis for disallowing the fees incurred in this category. Thus, the bankruptcy court did not need to provide any further explanation for this disallowance.

### c. Category E – Creditors' Motion To Amend Supplemental Complaint.

In this category, the bankruptcy court recognized 22.12 hours as timely requested. Of this amount, the court disallowed 7.12 hours as

50

unreasonable.

The court's findings in this category were specific enough to permit us to meaningfully review the court's ruling. The fees disallowed are relatively small in size. They pertain to a limited number of discrete tasks concerning Creditors' motion to amend their supplemental complaint. The bankruptcy court simply found that their counsel spent too much time on the motion to amend and on the supporting reply.

This finding was not clearly erroneous. On this record, Creditors' mere belief to the contrary does not establish that the court's unreasonableness finding was illogical, implausible or factually unsupported.

### d. Category F – Judgment On Pleadings - Attorney Fees As Enforcement Costs.

In this category, the bankruptcy court recognized 18.45 hours as timely requested. Of this amount, the court disallowed 6.45 hours as excessive.

The court's findings in this category were specific enough to permit us to meaningfully review the court's ruling. The fees disallowed are relatively small in size. They pertain to a limited number of discrete tasks concerning Creditors' motion for a partial judgment on the pleadings relating to their claim for relief for attorneys' fees. This motion is discussed at the beginning of section E, above. The bankruptcy court simply found

that Jakob spent too much time on the motion and on the supporting reply.

Creditors have challenged the court's excessiveness finding as clearly erroneous. Creditors insist that the time their counsel spent in this category was reasonable in light of the issues raised, in part, by Gilman's opposition to the motion. Creditors state a plausible argument why the bankruptcy court could have found that the amount of time expended in this category was reasonable. But Creditors' statement of a plausible argument does not establish that the court's excessiveness finding was illogical, implausible or factually unsupported. Put another way, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

### e. Category G – Motion To Amend Scheduling Order.

In this category, the bankruptcy court recognized all 18.27 hours as timely requested. Of this amount, the court disallowed 10.27 hours as excessive.

The court's findings in this category were specific enough to permit us to meaningfully review the court's ruling. The fees disallowed are relatively small in size. They pertain to a limited number of discrete tasks concerning Creditors' motion to amend a scheduling order. The bankruptcy court found that their counsel spent too much time on the motion and on the supporting reply. In making this finding, the court

52

noted that Creditors filed moving papers consisting of a 14-page motion and a 5-page declaration, that the motion was not complex, and that it was granted in part and denied in part.

Creditors have not challenged the amount disallowed in this category on any basis other than the specificity of the court's findings. Creditors do make one statement critical of the bankruptcy court's reference to the size of the motion. They state that the reference to size "seems to reflect an implicit decision—inconsistent with state law—to allow .5 hours for each page of work product." Opening Br. At 44-45.[17]

But we do not read the court's excessiveness finding as being based solely on the number of pages filed. Rather, we construe the court's excessiveness finding as being based on a variety of factors, as reflected by the court's other comments in this category and in general. Based on these

---

[17] In their challenge to the court's fee award in this category, Creditors do not cite any legal authority to support their position. But in the next category – category H – Creditors cite *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002) for the proposition that "[t]he length of a document is no gauge of the time needed to prepare it." While *Bonta* is, indeed, critical, of assessing the reasonableness of fees based on the size of the paper submitted to the court, we do not read *Bonta* as per se prohibiting a court from considering the complexity and size of papers among other factors in determining the reasonableness of fees. In fact, *Bonta* is distinguishable on its facts. *Bonta* explained that the appellant's attempt on appeal to challenge the court's fee award based **solely** on the page numbers of various pleadings and memoranda was not persuasive in light of the complexity of the matters addressed, and the precision and conciseness of the papers, which reflected "the exceptional attention counsel devoted to their preparation." *Id.* This decidedly was not the case here, where Creditors' litigation tactics more closely resembled shotgun blasts than shots from a sniper rifle.

comments, we construe the excessiveness finding as being based on, among other things, the lack of complexity of the matter, the results obtained, and on Creditors' overall litigiousness and prolixity in prosecuting the objection to discharge action. Creditors have not disputed the propriety of considering these other factors, and the law supports their consideration. *See Hensley*, 461 U.S. at 429-30.

### f. Category H – Order To Show Cause Re Claim Filing.

In this category, the bankruptcy court recognized all 19.13 hours as timely requested. Of this amount, the court disallowed 9.4 hours as excessive.

The court's findings in this category were specific enough to permit us to meaningfully review the court's ruling. The fees disallowed are relatively small in size. They pertain to a limited number of discrete tasks concerning Creditors' response to the court's order to show cause, in which the court directed Creditors to show cause why they should not be ordered to file a proof of claim assessing the amount of their claim as of the petition date. The bankruptcy court found that their counsel spent too much time on Creditors' response to the order to show cause. The court specifically disallowed a four-hour charge incurred organizing and sorting through loose papers. Creditors have offered no specific argument why this disallowance, of what appears to be a non-compensable administrative task, constituted reversible error. In fact, Creditors seem to concede on

appeal that they insufficiently explained this charge. The court deducted the remaining 5.4 hours disallowed in this category from their counsel's charges for drafting and revising their response.

On appeal, Creditors point out that the court referenced the size of the response as 11 pages long. Creditors claim that the court's excessiveness finding was based solely on the size of their response. They cite *Bonta*, supra, for the proposition that the page length of filings is not a reliable criteria for basing a determination on the reasonableness of fees. We already have addressed *Bonta* and the limitations of its holding.

More importantly, we do not read the court's excessiveness finding in this category as being based solely on the number of pages filed. Rather, we construe the court's excessiveness finding as being based on a variety of factors, including the lack of complexity of the matter and the results obtained, as suggested by the court's other comments in its fee ruling and at the hearing on Creditors' fee request. We read the court's excessiveness finding in this category as implicitly considering these other factors, even though the court's ruling did not specifically reference them in this particular category. As we have stated:

> As an appellate court, we must construe the bankruptcy court's findings of fact favorably, such that any doubt as to what the bankruptcy court meant is resolved in favor of upholding rather than invalidating the bankruptcy court's judgment. As a result, "whenever, from facts found, other facts may be inferred which will support the judgment, such inferences will be

deemed to have been drawn."

*Kelly v. Merrill (In re Merrill)*, BAP No. CC-13-1370-KuPaTa, 2014 WL 1244791, at *6 (9th Cir. BAP Mar. 26, 2014) (quoting *Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1384 (9th Cir. 1987)).

The only other argument Creditors make on appeal challenging the fee award in this category concerns the court's authority to disallow fees in the absence of a specific objection, presented with evidence, by the opposing party. We already have rejected this argument. The bankruptcy court was not obliged to rubber stamp Creditors' requested fees.

### g. Category I – Miscellaneous Trial Preparation.

In this category, the bankruptcy court recognized all 12.85 hours as timely requested. Of this amount, the court disallowed 2.85 hours as excessive.

In this category, Creditors included fees for preparing and serving subpoenas for trial, for researching Gilman's conduct in other state court lawsuits, and for corresponding with Gilman regarding a discovery dispute. The bankruptcy court apparently disallowed an aggregate amount of 1 hour related to subpoena service and state court lawsuit research. In neither the hearing on the fee motion nor in their Rule 9023 motion for rehearing did Creditors challenge the disallowance of these fees. We decline to address their challenge to these particular fees for the first time on appeal. *See Smith*, 741 F.3d at 1020 n.2; *Padgett*, 587 F.3d at 985 n.2.

According to the court, the remainder of its disallowance in this category of 1.85 hours pertained to a 2 hour charge for drafting and revising correspondence to Gilman regarding a discovery dispute. As Creditors point out, the record does not appear to contain a copy of the correspondence. When Jakob pointed this out to the court at the fee motion hearing, the court stated that the 10 hours allowed was "pretty generous" for the entire category.

On this record, given Creditors' litigiousness in this action and the economically irrational manner in which they prosecuted it, we are not persuaded that the court abused its discretion. Its disallowance of 1.85 hours of the above-referenced two-hour charge is adequately supported by the entirety of the record.

### h. Category M – Summary Adjudication of § 727(a)(2) Fraudulent Transfers

In this category, the bankruptcy court recognized 52.75 hours as timely requested and disallowed 32.75 hours as excessive.

The court gave multiple reasons for disallowing this amount. The court indicated that this was an unreasonable amount of time to spend on this summary adjudication motion, particularly given that the time counsel spent drafting replies to Gilman's summary judgment oppositions was charged in another category. The court further found that part of Creditors' argument in support of the motion was frivolous and revealed a

"fundamental misunderstanding of what fraudulent transfers are." Hr'g Tr. (June 7, 2017) at 40:12-13. The court also noted that, aside from a "hefty evidence volume" the moving papers were relatively short – only fourteen pages – along with a seven page statement of undisputed facts and a three-page declaration.

On appeal, Creditors primarily focus on the court's determination that a portion of his summary judgment argument was frivolous. In relevant part, Creditors argued that Gilman insisted on paying his former bankruptcy counsel, Shirlee Bliss, $2,500 as a prepetition retainer for filing his bankruptcy petition and schedules and representing him at the § 341(a) meeting of creditors, even though Bliss only asked for $1,500, her standard fee. According to Creditors, the voluntary payment of the extra $1,000 constituted a fraudulent transfer. It was this argument the bankruptcy court found to be frivolous.

Creditors strenuously argue that their reliance on the $2,500 payment to Bliss as a fraudulent transfer was not frivolous. They claim that their belief that a transfer of this type **could** qualify as a fraudulent transfer was supported by one sentence of dictum in a footnote from an Eastern District of California bankruptcy decision. This sentence indicated that a prepetition payment to an attorney can qualify, under appropriate circumstances, as a fraudulent transfer. *In re C & P Auto Transprt., Inc.*, 93 B.R. 682, 688 n.7 (E.D. Cal. 1988).

We find Creditors' argument on appeal unpersuasive. First, as a preliminary matter, Creditors do not explain how the fraudulent nature of this transaction could have been established as a matter of law and undisputed fact on the record presented at the summary judgment hearing. The economics, motivations and intent behind this transaction seem wholly dependent on inferences the court would need to draw from circumstantial evidence. In other words, Creditors' insistence that they were entitled to summary judgment with respect to this transaction seems to fly in the face of the axiomatic rule that, on summary judgment, all reasonable inferences must be drawn in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

More importantly, Creditors' focus on the court's reference to this transaction as frivolous misses the point. The label the court placed on this argument is not controlling. What really counted was the bankruptcy court's assessment that it was unreasonable for Creditors to spend time including this argument on summary judgment. The degree of unreasonableness, and whether this was frivolous, is irrelevant. Nothing that Creditors assert on appeal persuades us that the bankruptcy court erred in making this assessment.

The other arguments Creditors present on appeal regarding this category were not presented to the bankruptcy court, and we decline to consider them for the first time on appeal. *See Smith*, 741 F.3d at 1020 n.2;

*Padgett*, 587 F.3d at 985 n.2.

> **i.    Category N – Respond To Oppositions To Summary Judgment Motions**.

In this category, the bankruptcy court recognized all 142.55 hours as timely requested. Of this amount, the court disallowed 107.55 hours as unreasonable or not reasonably necessary.

The court's findings in this category were specific enough to permit us to meaningfully review the court's ruling.  While the fees disallowed are relatively large, they pertain to a limited number of discrete tasks concerning Creditors' responses to three of Gilman's summary judgment oppositions. The bankruptcy court simply found that Creditors' counsel spent too much time responding to the three oppositions.

Before disallowing these fees, the bankruptcy court obviously reviewed the papers that were the work product resulting from these fees. The bankruptcy court listed the docket numbers of the relevant court papers in its fee ruling. Creditors do not dispute that the court identified the correct papers. While we do not know exactly what the bankruptcy court was thinking as a result of its review of these papers, we do know the general types of factors the court considered from the comments the court made while discussing other categories during the fee hearing: "the court takes account of the legal issue, the analysis, the written work product, you know, the success. I mean, these are all issues we're supposed to take into

account in assessing reasonableness." Hr'g Tr. (June 7, 2017) at 36:14-17. Having considered these same factors with respect to Creditors' responses to Gilman's three summary judgment oppositions, the bankruptcy court held that no more than 35 hours was reasonably necessary for these tasks.

Other than complaining about the sufficiency of the bankruptcy court's explanation, Creditors offer nothing to persuade us that the court's assessment of the 142.55 hours Jakob spent responding to three summary judgment oppositions was clearly erroneous. Given the overly litigious and vitriolic manner in which the entire adversary proceeding was prosecuted, and given the economically irrational manner in which Creditors incurred fees in this action, the bankruptcy court's assessment of the fees charged for these services was not illogical, implausible or without support in the record.

### j.     Category O – Opposition To Motion For Continuance.

In this category, the bankruptcy court recognized all 83.2 hours as timely requested. Of this amount, the court disallowed 81.2 hours as unreasonable and excessive.

The work in this category arose from an opposition by Gilman to one of Creditors' summary judgment motions, and Gilman's filing of a motion for continuance of the summary judgment hearing, effectively asking the court to excuse his late filing. Creditors admit that their counsel mistakenly included in this category 54.3 hours of services that did not

belong in this category. Without citing any authority, Creditors contend that the bankruptcy court should have realized that their counsel made a categorization error and should have allowed the 54.3 miscategorized hours even though Creditors never amended their fee request to correct this error and never identified for the bankruptcy court which category the 54.3 hours properly should have been categorized in. Creditors' miscategorization of these fees rendered it impossible for the bankruptcy court to meaningfully assess the reasonableness of these fees.

Creditors had the initial burden to present accurate documentation in support of their fee request. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Given Creditors' failure to properly categorize the 54.3 hours, the bankruptcy court did not err in concluding that Creditors did not meet their burden as to that time.

As for the other 26.9 hours disallowed, Creditors essentially concede that the papers they filed in opposition to the motion for continuance were the only papers the court could review and that the filed opposition papers did not demonstrate an entitlement to the disallowed 26.9 hours. Instead, Creditors maintain that their counsel spent the disallowed 26.9 hours researching issues related to Gilman's motion for continuance and drafting papers that they never filed because the court granted the motion before Creditors had a chance to file all of their opposition papers.

Regardless of the reason why their counsel's complete work product was not available to the court, and regardless of whatever additional research and drafting he did, the bankruptcy court concluded at the fee hearing that opposing the motion for continuance was not worth the extra time counsel spent:"It's not worth that much time. It's not reasonable. It's excessive." Hr'g Tr. (June 7, 2017) at 42:17-18. In response, Creditors did not advise the court that the majority of the time charged in this category had been miscategorized. Instead, they argued that, if they had managed to successfully prevent the court from accepting Gilman's summary judgment opposition, Creditors likely would have easily prevailed on their summary judgment motion, and hence all of the time they had spent opposing Gilman's motion for continuance would have been well worth it. The bankruptcy court then pointed out to Creditors that summary judgment does not automatically follow from a default by the nonmoving party. *See* Civil Rule 56(e) and Advisory Committee Notes accompanying 2010 amendments.

At bottom, the bankruptcy court implicitly recognized that Creditors failed to exercise reasonable restraint in deciding which litigation tasks to pursue and how much time reasonably should be spent on them. They assumed that their massively mounting fees were wholly Gilman's problem. They acted as if they had carte blanche to spend as much as they wanted – that all of the fees could be shifted to Gilman under CCP

§ 685.040 without consideration of their reasonableness or their necessity. As explained above, this is not how CCP § 685.040 was meant to work.

In this billing category, the bankruptcy court determined that, under the circumstances of this adversary proceeding, opposing Gilman's efforts seeking relief from his late-filed summary judgment opposition was not worth more than two hours of attorney time. We cannot say that, under the circumstances presented, this determination was illogical, implausible or without support in the record.

### k.     Category P – Pretrial Stipulation On All § 727 Grounds.

In this category, the bankruptcy court recognized all 330.28 hours as timely requested. Of this amount, the court disallowed 180.28 hours as excessive and unreasonable.

The caption for this category is under-inclusive as it appears to encompass most of the work performed immediately prior to trial. Unlike many of the other categories discussed above, therefore, this category pertained to the heart of the litigation: preparing a pretrial stipulation with opposing counsel, as well as working on pocket briefs, trial briefs and motions in limine. Even given the incredible amount of time billed overall in the adversary proceeding, the 330.28 hours billed in this category is almost double the amount billed in any other category of fees. Although the court disallowed 180.28 hours, the remaining 150 hours allowed is still the most fees allowed by far of any category.

In its ruling, the court acknowledged that at least some of these tasks helped streamline and expedite the matter going forward. For instance, as a result of the parties' efforts, they were able to stipulate to over 130 facts for use at trial. In turn, the bankruptcy court further acknowledged that, in light of the stipulated facts, the sole issue needing to be tried on Creditors' § 727(a)(2)(B) claim was the issue of intent. Thus, the time the parties spent negotiating over and working on the pretrial stipulation would seem to have been time well spent.

The bankruptcy court gave a detailed description of the work included in this category. It noted that Creditors filed a pretrial statement along with two supplements, a trial brief and reply, a declaration in lieu of testimony, and responses to objections to that declaration. These appear to be valid pretrial activities, but we cannot tell whether the court deducted fees from the time billed on these activities. Additional time was billed to prepare for trial. In contrast to many other billing categories, there is no evident time wasted on seeking sanctions (with the exception of one sanctions motion, which according to the court Creditors mischaracterized as a motion in limine).

Nor did the bankruptcy court point to any specific wasted, unnecessary, or excessive effort in this category, except for 8.4 hours spent on what the court considered to be unfiled motions. Creditors have described these efforts as "pocket briefs" written to address several discrete

legal issues they anticipated might arise during trial. The court disallowed the entire 8.4 hours because they never were filed with the court. But in the specific context of trial preparation, we don't understand why the time spent on these unfiled motions was per se unreasonably wasteful. The reasonableness of the time spent must be assessed based on what was reasonable at the time the fees were incurred. *See Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1176-77 (9th Cir. 2019) (en banc). The bankruptcy court did not specify whether there was something about the subject matter of these unfiled motions that placed them so far afield as to make them, without the benefit of hindsight, unreasonably wasteful.

Similarly, the court points out that, after trifurcation, the only claim tried was Creditors ' § 727(a)(2)(B) claim. According to the court this claim did not present complex issues. And yet, we cannot tell from the amount disallowed whether the court deducted for work on other claims undertaken before trifurcation. The court did not trifurcate the case until April 2016, but the billing statements in this category go back to June 2015 and include considerable time from the first quarter of 2016.

This category captures the tension involved in appellate review of fee awards. Creditors complain, in relevant part, that there is no explanation as to how the court decided that 180.28 hours was the appropriate amount of hours to deduct from this category. In this isolated instance, we cannot tell how the court arrived at that figure. Yet, the court gave voice to certain

66

concerns that led it to conclude that much of the time billed was wasteful – particularly as the sole claim that went to trial was not a complex one in its view. In this regard we are mindful that the fees incurred in this category were part of a whole: a whole that included demonstrable wasted effort in the process of obtaining a victory that for the most part enables Creditors to continue to seek from Gilman recovery of fees incurred to collect other fees.[18]

Ultimately, in this limited instance we do not have a clear understanding of the basis for the fees the court disallowed in this category. This frustrates meaningful appellate review of its decision. The tasks performed concerned trial preparation and the parties' efforts to streamline the matter for trial. Given the amount of fees allowed, considerable work in this category was necessary, and provided a benefit. However, unlike other categories, we are unable to understand the contours of the court's reduction of these fees in light of the substantive nature of work performed in this category. As a result, we cannot evaluate

---

[18] The fees in this category raise a recurring concern about waste as they include suspiciously large daily billings. For example, on February 15, 2016, Jakob billed 11 hours in this category, only to bill 23 additional hours on the very next day. Creditors' rationale for the extraordinary amount of attorney time they have spent is that neither they, nor their counsel, are "slackers." By stating this, they seem to believe that any amount of fees they incur to pursue Gilman should be recoverable under CCP § 685.040. As explained above, this is not how this statute works. If a reasonable client who actually was expected to pay the fees would not have incurred them, then they are not reasonable or recoverable.

its stated concerns about the pocket briefs, the narrowed focus of the trial after trifurcation, and the resulting waste of time in light of what appear to be valid activities. For these reasons, we must VACATE and REMAND the ruling on this fee category for more explanation from the bankruptcy court regarding the particular tasks or types of tasks that it concluded were unreasonable or excessive in light of the pretrial services provided. *See In re Bradford*, 112 B.R. at 353.

### l.    Category R – Conclusion Of § 727(a)(2)(B) Trial.

In this category, the bankruptcy court recognized all 41.9 hours as timely requested. Of this amount, the court allowed 16 hours spent on August 11 and 12, 2016, traveling to, preparing for and appearing at closing argument. Of the remaining 25.9 hours, the court disallowed as excessive 11.9 hours spent preparing for closing argument on August 8 and 10, 2016.

The court's findings in this category were specific enough to permit us to meaningfully review the court's ruling. The fees disallowed are relatively small in size, and they all pertain to the discrete task of preparation for closing argument. The bankruptcy court simply found that Creditors' counsel spent too much time on this task.

Creditors  admit in their appeal brief that, instead of ordering and paying for a trial transcript to expedite preparation for closing argument, their counsel listened to hours of trial testimony from audio recordings. This doubtlessly increased by a number of hours the amount of time

counsel needed to spend reviewing trial testimony in preparation for closing argument. Creditors concede this point in their appeal brief. But they suggest that they could not afford, or chose not to pay, the cost of a trial transcript.

Far from supporting their challenge to this fee ruling, Creditors' argument underscores the point we have repeated throughout this decision about what a reasonable client would have been willing to pay. Creditors balked at paying even a small amount out of pocket to facilitate their counsel's preparation for closing argument. Instead, they permitted counsel to review trial testimony through the relatively inefficient means of listening to audio recordings of trial. Counsel apparently acquiesced to this inefficiency, expecting to fully recover his fees under CCP § 685.040. The bankruptcy court was not obliged to award Creditors all of the fees their counsel incurred reviewing trial testimony via audio recording. Additionally, in light of the admittedly inefficient manner of review employed, we cannot say that the bankruptcy court's disallowance as excessive of 11.9 hours spent preparing for closing argument was illogical, implausible or not supported by the record.

### m. Category S (part 1) – Responding To Reeves Sanctions Motions.

In this category, the bankruptcy court recognized all 39.95 hours as timely requested. The time in this billing category was supposed to relate

to Creditors' opposition to motions for sanctions filed by Gilman's counsel (Reeves). The court was troubled that the services in this billing category also included work on Creditors' own Rule 9011 sanctions motion. As for the fees related to the oppositions, the court recognized that "[t]he fees incurred opposing Defendant's motions are reasonable." However, the court was unable to tell which fees were related to the oppositions and which were related to Creditors' sanctions motion. As an example, the court pointed to a single 4 hour time entry for "drafting/revising 'opposition to sanctions motion Dkt 397 and Rule 11 motion.'" The court found that "[i]t is unclear if this entry relates to Plaintiffs' own FRBP 9011 motion, and if it does, which portion of the 4 hours was spent opposing Defendant's motions and which portion was spent on Plaintiff's motion." Concluding that counsel had improperly lumped the two activities, preventing it from assessing the reasonableness of the time spent, the court disallowed the 4 hours. The court further noted that this disallowance was also appropriate "in light of the fact that 23.55 hours is excessive for opposing sanctions motions . . . [t]his leaves a total of **19.55 hours** for this category." (Emphasis Added.)

Addressing the balance of the fees, the court declined to approve any fees related to sanctions motions it had denied. The court observed that, between the adversary and underlying bankruptcy case, Creditors had filed a total of 33 sanctions motion, not counting what the court described

as the "repeated requests for sanctions embedded in nearly every filing by Plaintiffs." Of the filed sanctions motions, only five were granted. Clearly, the court believed that the time spent on Creditors' own motion for sanctions, which was denied, was excessive and unreasonable. Given the sheer volume of sanctions motions and incessant sanctions requests, the court's ruling in this regard was not implausible, illogical, or unsupported by the record.

The problem in this category relates to the inability to discern what, if any, fees the court found related to Creditors' opposition to Gilman's (Reeves') sanctions motions. Other than the specific 4 hour time entry that lumped fees from the oppositions and Creditors' own motion, the court did not take issue with the time spent on the oppositions. Having reviewed all of the time entries for this billing category, there appears to be time that relates solely to the oppositions, including attendance at the hearing on Gilman's motion for sanctions and preparation of the order after the hearing.

The court's calculation that disallowance of the 4 hours for lumping from 23.55 hours left only 19.55 hours for this category also is problematic. The billing statements show that 39.95 hours were billed in this category. It appears that the court erroneously used 23.55 hours as the total time billed in this category, instead of the 39.95 hours set out in the billing records. While it is possible to "disallow" a combination of the entries in this

category to arrive at 23.55, we have no confidence that the entries necessary to back into the court's 23.55 hours used in its decision were those that the court intended to disallow. Because we cannot ascertain what hours were disallowed as relating to Creditors' sanctions motion, or the hours allowed relating to the opposition to the Gilman sanctions motions, we will VACATE and REMAND the ruling on this category for further findings.

### n. Category S (part 2) – Creditors' Bad Faith Declaration Sanctions Motion.

In this category, the bankruptcy court recognized all 36 hours as timely requested. Of this amount, the court disallowed all 36 hours. As the basis for this disallowance, the court in large part relied on Creditors' gross excess in pursuing sanctions throughout the course of the adversary proceeding. In light of this history, the court stated that it would not allow any fees incurred filing sanctions motions that were denied – which included Creditors' bad faith declaration sanctions motion.

On appeal, Creditors contend that the bankruptcy court abused its discretion by applying a categorical rule disallowing all time spent on sanctions motions that were denied. But Creditors misconstrue the court's ruling. Taken as a whole, and in light of our reading of the entire record, we perceive the court's comments as not reflecting so much a categorical rule regarding the time spent on sanctions motions that were denied, but rather an observation regarding the massive amount of time Creditors

wasted constantly pursuing sanctions as a recurring litigation tactic. Indeed, the overwhelming number of sanctions motions is an apt reflection of the overly-litigious and vitriolic manner in which this adversary proceeding was prosecuted. The court's ruling was based on its view that the sanctions motions it denied served no legitimate purpose. The only purpose these motions served was to gross up Creditors' fee requests.

Viewed in the light of this misuse of the bankruptcy litigation process, we hold that the bankruptcy court's disallowance of the 36 hours in fees in this category was not an abuse of discretion.

### o. Expense Reimbursement Ruling.

According to Creditors, their timely expense reimbursement requests totaled $4,661.39. The court allowed $3,839.98 of this amount and disallowed $821.41. The bankruptcy court's expense reimbursement ruling indicated that it had trouble following Creditors' expense documentation and categorization scheme. The court's comments in its ruling and at the fee hearing further indicate that the bankruptcy court twice attempted to go through the materials provided and, having done so, found that $3,839.98 of the expenses incurred were both reasonable and timely submitted to the court for reimbursement. It follows that the court implicitly found as untimely, unreasonable, or both, the remaining $821.41 in expenses that Creditors assert were timely requested.

On appeal, Creditors argue that the bankruptcy abused its discretion

by not allowing all of the items listed in their expense reimbursement request because Gilman did not specifically oppose this request. We already have stated several times in this decision that the bankruptcy court was not obliged to rubber stamp the fees and expenses Creditors requested merely because Gilman did not specifically oppose them.

The only other argument Creditors offer on appeal regarding their expenses concerns the sufficiency of the evidence they submitted. Creditors posit that, if the court had carefully studied the receipts and other papers they submitted, it should have had enough evidence to reasonably find that an additional $821.41 of requested expenses were both timely and reasonable. This argument misses the point. To prevail on appeal, it is not enough for Creditors to demonstrate that the court reasonably could have found in their favor on the disallowed expenses of $821.41. They must demonstrate that the bankruptcy court's findings to the contrary were clearly erroneous. Nothing Creditors have said or pointed to on appeal persuades us that the court's findings regarding the expenses disallowed were illogical, implausible or without support in the record.

## CONCLUSION

With the exception of the two fee rulings identified above as VACATED AND REMANDED, all of the other orders on appeal are AFFIRMED.