FILED

APR 13 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. NV-14-1115-JuKuD |
| ) | |
| CHARLES G. MAHAKIAN, ) | Bk. No. 2:10-bk-17568-MKN |
| ) | |
| Debtor. ) | Adv. No. 2:11-ap-01207-MKN |
| _____) | |
| ) | |
| CHARLES G. MAHAKIAN, ) | |
| ) | |
| Appellant, ) | |
| v. ) | **O P I N I O N** |
| ) | |
| WILLIAM MAXWELL INVESTMENTS, ) | |
| LLC, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on March 19, 2015
at Las Vegas, Nevada

Filed - April 13, 2015

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Chief Bankruptcy Judge, Presiding

_____

Appearances:   Mark Bruce Segal argued for appellant Charles G.
               Mahakian; David V. Wadsworth, of Sender Wasserman
               Wadsworth, P.C., argued for appellee William
               Maxwell Investments, LLC.

_____

Before:  JURY, KURTZ, and DUNN, Bankruptcy Judges.

JURY, Bankruptcy Judge:

Chapter 7[1] debtor, Charles G. Mahakian (Debtor), omitted appellee-creditor William Maxwell Investments, LLC (WMI) from his schedules in what was originally noticed as a no asset case. After Debtor received his § 727 discharge, the chapter 7 trustee (Trustee) filed a notice of assets, a claims bar date was set, and notice was sent to creditors. WMI did not receive notice of the claims bar date and never filed a proof of claim (POC) in this case. WMI foreclosed on the real property which secured the debt guaranteed by Debtor and then filed a lawsuit against Debtor in the state court to collect the deficiency.

In the bankruptcy case, Debtor amended his Schedule F to include WMI as a creditor. Debtor also filed a POC on WMI's behalf well past the claims bar date and the additional thirty days allowed under Rule 3004. Debtor then commenced this adversary proceeding requesting a determination that his obligation to WMI had been discharged, and filed a motion seeking to have the POC filed on WMI's behalf deemed as timely filed under § 523(a)(3)(A) based on excusable neglect (Retroactive POC Motion).

On the parties' cross-motions for summary judgment in the adversary proceeding, the bankruptcy court entered a judgment in favor of WMI and against Debtor, finding that the prepetition

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

debt of WMI had not been discharged because it had never been scheduled (MSJ Judgment). The bankruptcy court denied Debtor's Retroactive POC Motion in a separate order (Retroactive POC Order). Debtor appeals from the SMJ Judgment and Retroactive POC Order. For the reasons stated, we AFFIRM.

## I. FACTS[2]

Debtor and his brother were members in Fountain View Center, LLC (FVC). In May 2006, Union Bank loaned $1,735,000 to FVC which was evidenced by a promissory note secured by a deed of trust against real property located in Maricopa County, Arizona. Debtor and his brother personally guaranteed the FVC loan.

On April 27, 2010, Debtor filed a skeletal chapter 7. Debtor did not include Union Bank in the creditor mailing matrix attached to the petition.

The bankruptcy clerk sent out the standard § 341 notice setting June 2, 2010, as the date for the first meeting of creditors and August 2, 2010, as the last day for filing complaints under §§ 523 or 727. The court noticed the case as a no asset case, advising creditors not to file a POC. Union Bank did not receive this notice.

In June 2010, Union Bank assigned the promissory note and deed of trust to WMI.

In mid-July 2010, Debtor filed his schedules and statement

---

[2] As noted by the bankruptcy court, the historical and procedural facts were either stipulated or not disputed by the parties.

-3-

of financial affairs (SOFA).[3] Debtor did not list the debt owed to Union Bank, which had been assigned to WMI, in his schedules.

On October 19, 2010, Debtor was granted his § 727 discharge.

The next day, Trustee filed a notice that assets would be administered for the payment of creditors claims. The clerk then sent notice to all matrix-identified creditors which set a deadline of January 24, 2011, for the filing of proofs of claim. Neither Union Bank nor WMI received this notice.

The Internal Revenue Service (IRS) timely filed a POC in the secured amount of $109,205.90, priority unsecured amount of $38,002.40, and nonpriority unsecured amount of $1,046.65.

In early December 2010, FVC had defaulted on the FVC loan. A notice of sale under the deed of trust was recorded and on April 2, 2011, WMI purchased the property for $1,350,000 at a non-judicial foreclosure sale. At some point, WMI's counsel informed Debtor's counsel that WMI was owed a prepetition debt based on a deficiency due to Debtor's personal guarantee.

On May 24, 2011, Debtor filed an amended Schedule F that added Union Bank and WMI as unsecured creditors having a disputed claim in an "unknown" amount based on the loan to FVC. Two days later, Debtor served Union Bank and WMI with a copy of the § 341 notice by mail.

On June 28, 2011, WMI commenced a lawsuit against Debtor, his brother, and others in the Superior Court for Maricopa County, Arizona (Case No. CV-2011-053051). Based upon their

_____

[3] The bankruptcy court entered two orders extending the time for Debtor to file his schedules and SOFA.

-4-

personal guarantees of the FVC loan, WMI sought to recover from Debtor and his brother the balance of the FVC loan in the amount of $446,516.14. Debtor filed an answer to WMI's complaint, but it is unclear whether he asserted his discharge as a defense.

On August 2, 2011, Debtor filed a POC on WMI's behalf in his bankruptcy case in the nonpriority amount of $446,516.14. Since the claims bar date was January 24, 2011, Debtor had thirty days under Rule 3004, or until February 23, 2011, to file a POC on WMI's behalf.

Debtor then commenced this adversary proceeding against WMI, seeking a determination that any debt owed to WMI was discharged under § 727 and requesting injunctive relief to prevent WMI from collecting the debt in the state court action. Debtor amended the complaint to include a claim for attorney's fees and costs allegedly based on a violation of the discharge injunction arising under § 524.

On August 17, 2011, Debtor filed the Retroactive POC Motion in the bankruptcy case asking the court to "retroactively" approve his filing of a POC on WMI's behalf under Rule 3004 based on Rule 9006(b)(1) and the excusable neglect standard applied in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993). The Pioneer court set forth four factors for determining whether a party's neglect of a bar date was excusable: "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395.

Debtor argued that all four factors weighed in favor of the bankruptcy court finding excusable neglect. First, Debtor asserted that he would be prejudiced if WMI's claim passed through the bankruptcy without being discharged. Debtor argued that he filed a POC on WMI's behalf in time to permit payment of the claim under § 726(a)(2)(C)(ii). Second, Debtor maintained that the length of delay in filing the POC was only thirty-five days after WMI sued debtor in Arizona. According to Debtor, it was not clear until that time that WMI would disagree with his position that the debt had been discharged. Third, Debtor contended that there was no sinister motive on his part and he was under the mistaken impression that, based on an agreement with his brother, he was no longer obligated under the personal guaranty to Union Bank. Finally, Debtor argued that he acted in good faith by filing the POC soon after WMI sued him in Arizona.

WMI opposed Debtor's motion, contending that under the plain language of §§ 523(a)(3) and 727(b) the debt was excepted from discharge because it was neither listed nor scheduled and WMI had no notice or actual knowledge of the bankruptcy case in time to timely file a POC. WMI also argued that the excusable neglect standard under the Pioneer factors was not met in this case.

At the initial hearing on the Retroactive POC Motion, the bankruptcy court continued the matter to allow Debtor to file an additional response to WMI's opposition. On October 5, 2011, Debtor filed a supplemental reply. There, Debtor asserted that § 726(a)(2)(C) makes timely an otherwise "tardy" claim for purposes of deeming a claim to have been filed in time to permit

its payment. In other words, § 523(a)(3)(A)'s timely-filed requirement includes "tardily" filed claims under § 726(a)(2)(C). Debtor also stated that he was not seeking to have the POC allowed nunc pro tunc as of February 23, 2011, which was the deadline to file the POC under Rule 3004.

In November 2011, WMI filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction or, alternatively, based on a request for abstention. The bankruptcy court heard WMI's motion on January 17, 2012, and took the matter under submission. Pending the outcome of the dismissal and abstention motion, the Retroactive POC Motion, which was scheduled to be heard on the same day, was vacated from the court's calendar. In July 2012, the bankruptcy court denied WMI's dismissal and abstention motion in a memorandum decision and order. The Retroactive POC Motion was not re-calendared.

On June 8, 2012, Trustee filed a notice of final report and proposed distribution. The final report indicated that the IRS would receive a payment on a portion of its secured claim, but that no distribution would be made to nonpriority unsecured claims in the case. No one filed an objection to Trustee's proposed distribution.

On September 24, 2012, Trustee filed his final distribution report setting forth the payments he had made to creditors in the case.

In mid-November 2012, the bankruptcy court entered an order setting a trial in this adversary proceeding. Thereafter, the parties filed a joint stipulation of facts and cross motions for

-7-

summary judgment. After a hearing on January 16, 2013, the bankruptcy court took the matter under submission.

On February 28, 2014, the bankruptcy court issued a memorandum decision denying Debtor's motion for summary judgment (MSJ) and granting WMI's MSJ. In its ruling, the court adopted the reasoning in Purcell v. Khan (In re Purcell), 362 B.R. 465 (Bankr. E.D. Cal. 2007), a case factually similar to this case. The court in In re Purcell cited to Laczko v. Gentran, Inc. (In re Laczko), 37 B.R. 676, 678-79 (9th Cir. BAP 1984), aff'd without opinion, 772 F.2d 912 (9th Cir. 1985) (table), which stated that when a bar date is set and an unscheduled creditor is deprived of the right to file a timely proof of claim, the plain language of § 523(a)(3)(A) should be followed - courts had no power to disregard the clear language of § 523(a)(3)(A). In the end, the Purcell bankruptcy court concluded that there were no equitable exceptions to § 523(a)(3)(A) and that its plain language controlled. Following Purcell, the bankruptcy court here applied the plain language of § 523(a)(3)(A) to the undisputed facts and found that all elements for an exception to discharge were met. On the same day, the bankruptcy court entered the MSJ Judgment finding that WMI's debt was excepted from Debtor's discharge.

Also on February 28, 2014, the bankruptcy court entered the Retroactive POC Order denying the motion. The bankruptcy court construed Debtor's motion to seek a determination that the Retroactive POC Motion was filed on August 2, 2011, the same day as the POC was filed. Indeed, the bankruptcy court found in its memorandum decision that "it is not entirely clear why the

-8-

Debtor labels the Retroactive POC Motion as seeking relief 'nunc pro tunc'." As a result, the court found that the "relief requested in the Retroactive POC Motion was immaterial to the dischargeability of the obligation owed by the Debtor to WMI." Thus, the bankruptcy court did not consider the excusable neglect standards under <u>Pioneer</u>.

Debtor filed a timely notice of appeal (NOA) from the "judgment, order, or decree" of the bankruptcy court entered on February 28, 2014. WMI contends that Debtor's NOA does not include an appeal from the Retroactive POC Order. We discuss the scope of the appeal below.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.  What is the scope of this appeal?

B.  Did the bankruptcy court abuse its discretion by not applying the excusable neglect standards to Debtor's untimely filed POC?

C.  Did the bankruptcy court err by finding that the plain language of § 523(a)(3)(A) precluded Debtor's discharge of WMI's unscheduled claim?

## IV.  STANDARDS OF REVIEW

We address the question of our jurisdiction de novo. <u>Menk v. LaPaglia (In re Menk)</u>, 241 B.R. 896, 903 (9th Cir. BAP 1999).

The bankruptcy court's denial of a request for an extension of time under Rule 9006 is reviewed for abuse of discretion.

-9-

Foster v. Double R Ranch Ass'n (In re Foster), 435 B.R. 650, 655 (9th Cir. BAP 2010) (citing Nunez v. Nunez (In re Nunez), 196 B.R. 150, 155 (9th Cir. BAP 1996)).  In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).  If the correct legal rule was applied, we then consider whether its application of the correct legal standard "was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." Id. at 1263.  Only in the event that one of these three apply are we then able to find that the lower court abused its discretion. Id. at 1262.

We review the bankruptcy court's decision to grant or deny a motion for summary judgment de novo. In re Foster, 435 B.R. at 655.  We also review issues of statutory construction and conclusions of law de novo. Id.

## V.  DISCUSSION

### A.  The Scope of the Appeal

Before reaching the merits, we briefly address the scope of the appeal.  Debtor's main argument on appeal is that the bankruptcy court erred by declining to address whether the excusable neglect standards under Pioneer were met as applied to Debtor's tardily filed POC.  Debtor maintains that once it is determined a tardy filing was due to excusable neglect, the filing is deemed timely for discharge purposes under § 523(a)(3)(A) so long as the claim was filed in time for the creditor to receive payment from the chapter 7 trustee under

-10-

§ 726(a)(2)(C).

WMI contends that Debtor did not raise Rule 9006 and excusable neglect in his MSJ and his NOA only challenged the MSJ Judgment. Relying on Shevchynski v. Christiansen, 122 F. App'x 359 (9th Cir. 2005), WMI maintains that we lack jurisdiction to review an order not identified in the NOA. We disagree.

While it is true that Debtor did not list any specific judgment or order in his NOA, at the time he filed his appeal, Rule 8001(a) did not require him to do so. United States v. Arkison (In re Cascade Roads, Inc.), 34 F.3d 756 (9th Cir. 1994). Since then, the Rules have been amended effective December 1, 2014, and Rule 8003 now governs the content of a NOA. In addition, Debtor fully briefed the Rule 9006 and excusable neglect issue before the bankruptcy court and in his opening brief before this Panel. WMI responded to those arguments. The bankruptcy court also addressed the Retroactive POC Motion in its memorandum decision on the parties' cross motions for summary judgment. Finally, Debtor's submissions in this appeal show that he also is challenging the Retroactive POC Order entered on the same date as the MSJ Judgment. Because we interpret notices of appeal liberally, and WMI has not been prejudiced or misled by the contents of Debtor's NOA, we construe the NOA as covering both the MSJ Judgment and the Retroactive POC Order. See In re Cascade Roads, Inc., 34 F.3d at 761–62.

**B.    The Merits**

Our resolution of this case turns on the interpretation of § 523(a)(3)(A). Questions of statutory interpretation begin

-11-

with the plain language of the statute. Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). Section 727 provides that a chapter 7 debtor is discharged from all debts, subject to the exception in § 523(a)(3)(A). Section 523(a)(3)(A) states in relevant part:

> A discharge under [§] 727 . . . of this title does not discharge an individual debtor from any debt— . . . (3) neither listed nor scheduled . . . with the name . . . of the creditor to whom such debt is owed, in time to permit— . . . timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing . . . .

The language contained in § 523(a)(3)(A) is clear and not ambiguous: a debt is excepted from discharge if the creditor was neither listed nor scheduled and did not otherwise know of the bankruptcy case in time to file a timely POC. As there is nothing for us to interpret, we must enforce the statute according to its terms. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). The undisputed facts show that Debtor did not list or schedule the debt owed to WMI prior to the claims bar date and that WMI did not have notice or actual knowledge of the case in time to file a timely POC. Thus, the bankruptcy court properly found that all the elements under § 523(a)(3)(A) for an exception to Debtor's discharge were met.

Nonetheless, Debtor argues on appeal that our decision on the dischargeability of WMI's debt lies somewhere outside the plain language of § 523(a)(3)(A). Debtor maintains that he was authorized under § 501(c) to file a POC on behalf of WMI and although his filing of the POC was untimely, Rule 9006(b)(1) and the excusable neglect standards under Pioneer apply and are met in this case. Without citation to any binding authority, Debtor asserts that once the excusable neglect standards are met, his

-12-

tardily filed POC under Rule 3004 is deemed to be "timely" for discharge purposes so long as it was made at a time when the creditor would have been able to receive payment from the chapter 7 trustee under § 726(a)(2)(C).[4] We are not persuaded.

Debtor is correct that in chapter 7 cases, some untimely filed proofs of claim are "allowed." Section 502(b)(9) provides that an untimely claim should be disallowed "except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of [§] 726(a)." Section 726(a)(2)(C) allows payments to unsecured creditors who submit "tardily filed" proofs of claim if the creditor had no notice or actual knowledge of the bankruptcy case to permit a timely filing. The tardy claim must be filed in time to permit payment, i.e., before the distribution of the bankruptcy estate. § 726(a)(2)(C)(ii). These payments are allowed the same priority as timely filed claims.

These statutes do not support Debtor's position. Section 502(b)(9) addresses the circumstances under which an untimely claim is allowed and § 726(a)(2)(C) addresses the priority of distributions to unsecured creditors who submit tardily filed proofs of claim. The scope and aim of §§ 502(b)(9) and 726(a)(2)(C) is thus distinct from and not connected to the dischargeability of a debt. Here, Debtor's conduct falls within

---

[4] Some courts have approached § 523(a)(3)(A) by focusing on whether a party has an opportunity to participate in distributions rather than by focusing on the plain language of the statute. See Lott Furniture, Inc. v. Ricks (In re Ricks), 253 B.R. 734 (Bankr. M.D. La. 2000); Eglin Fed. Credit Union v. Horlacher (In re Horlacher), 2009 WL 903620 (N.D. Fla. Mar. 31, 2009).

-13-

the particular circumstances addressed in § 523(a)(3)(A) and not the other statutes relied upon. Section 726(a)(2)(C) is also inapplicable to this case by its plain terms. This section applies only to "tardily filed" claims filed under § 501(a). Section 501(a) refers to claims filed by creditors and indenture trustees. WMI did not submit a "tardily filed" POC in this case.

Debtor's reliance on the excusable neglect standards to override the plain language of § 523(a)(3)(A) is also misplaced. While excusable neglect might be relevant to determine whether a late-filed POC under Rule 3004 should be deemed timely filed, such a finding does not translate into a timely filed claim for purposes of § 523(a)(3)(A).[5] As Debtor would have it, if he can establish excusable neglect for filing an untimely POC on the creditor's behalf prior to distributions in the case, we should simply ignore the language in § 523(a)(3)(A) pertaining to unscheduled debts and notice and find the debt discharged. Adopting Debtor's argument would make a nullity of § 523(a)(3)(A) concerning the consequence of not properly listing or scheduling such a debt. It would also be inequitable to allow Debtor the benefit of dischargeability and treat the debt as if it had been listed when WMI, who was not at fault, is

---

[5] Debtor's reliance on In re Sprague, 2013 WL 6670576 (Bankr. D. Idaho Dec. 18, 2013), is misplaced. Sprague is a chapter 13 case where the bankruptcy court deemed a late-filed POC under Rule 3004 as timely filed after finding the standards for excusable neglect had been met. The bankruptcy court briefly discussed § 523(a)(3)(A) in a footnote which was mostly dicta. The court concluded by noting that the discharge issue was not before it. Id. at *4 n.7.

-14-

deprived of valuable rights in the bankruptcy.

A strict construction of § 523(a)(3)(A) is supported by Judge O'Scannlain's concurring opinion in <u>Beezley v. Cal. Land Title Co. (In re Beezley)</u>, 994 F.2d 1433 (9th Cir. 1993),[6] which was later adopted by the Ninth Circuit in <u>White v. Nielsen (In re Nielsen</u>, 383 F.3d 922, 926 (9th Cir. 2004). While the actual holding of <u>Beezley</u> is irrelevant to an asset case such as this, Judge O'Scannlain's reasoning lends support to the plain language approach we apply today.

In examining the legislative history of § 523(a)(3), Judge O'Scannlain observed that "Congress has expressly disapproved the importation of equitable notions of a debtor's good faith or a creditor's fair opportunity to participate in the bankruptcy process into the interpretation and analysis of section 523(a)(3)." <u>In re Beezley</u>, 954 F.2d at 1439 n.4. At another point, Judge O'Scannlain emphasized that "[n]owhere in section 523(a)(3) is the **reason** why a debt was omitted from the bankruptcy schedules made relevant to the discharge of that debt. Courts are not free to condition the relief Congress has made available in the Bankruptcy Code on factors Congress has deliberately excluded from consideration." <u>Id.</u> at 1439

---

[6] There, the debtor Beezley sought to reopen his bankruptcy case for the purpose of amending his schedules to include an omitted creditor so that the debt could be discharged. The bankruptcy court denied the motion and the Ninth Circuit affirmed. The court observed that after a case has been closed, dischargeability is unaffected by scheduling. Therefore, amendment of Beezley's schedules would have been a pointless exercise. In a concurring opinion, Judge O'Scannlain noted that § 523(a)(3)(A) is not triggered in a no asset, no bar date bankruptcy case because there is no time limit for "timely filing of a proof of claim," so none are untimely.

(footnotes omitted). Finally, Judge O'Scannlain stated that "we have only to apply the law as Congress has written it. What Congress deemed a proper balancing of the equities as between debtor and creditor with respect to unlisted debts it has enacted in section 523(a)(3) of the Bankruptcy Code. It is not for the courts to restrike that balance according to their own lights." Id. at 1440.

Taken together, Judge O'Scannlain's observations support a plain reading of § 523(a)(3)(A) which does not contain any equitable exceptions. Therefore, the bankruptcy court had no need to examine Debtor's professed good faith which he characterized as a Pioneer factor. That Debtor may have filed a POC on WMI's behalf before Trustee made the distributions in the case is also irrelevant for purposes of § 523(a)(3)(A). Again, discussed as a Pioneer factor for excusable neglect, Debtor stated that the reason he omitted WMI from his schedules was some agreement with his brother. However, in the § 523(a)(3)(A) plain language analysis, the reason for the omission is irrelevant.

We have previously stated that the court has no power to disregard the clear language of § 523(a)(3)(A). See In re Laczko, 37 B.R. 676. Although application of the plain text of § 523(a)(3)(A) may lead to harsh results, courts may not "soften the import of Congress' chosen words." Lamie v. U.S. Tr., 540 U.S. at 538.

## VI. CONCLUSION

For the reasons stated, we AFFIRM.