FILED

AUG 21 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

In re:

MICHAEL ALLEN ZITO and
ELIZABETH ZITO,

                Debtors.

_____

MICHAEL ALLEN ZITO; ELIZABETH
ZITO,

                Appellants,

v.

DOUGLASS ENTERPRISES, LLC,

                Appellee.

BAP No. AZ-18-1236-BFL

Bk. No. 3:09-bk-25681-GBN

**MEMORANDUM**\*

Argued and Submitted on July 18, 2019
at Phoenix, Arizona

Filed – August 21, 2019

Appeal from the United States Bankruptcy Court

---

    \* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

———

Appearances:    Appellant Michael Allen Zito argued pro se; Philip J. Giles of Allen Barnes & Jones, PLC argued for Appellee Douglass Enterprises, LLC.

———

Before:    BRAND, FARIS and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellants Michael and Elizabeth Zito appeal a judgment determining that their debt owed to Douglass Enterprises, LLC was not discharged in their individual chapter 11[1] case under § 523(a)(3)(A). After trial, the bankruptcy court found that the Zitos had failed to establish that Douglass Enterprises had notice or actual knowledge of the case in time to file a timely proof of claim. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Background of the parties

The Zitos owned and managed BySynergy, LLC, a Delaware limited liability company in the business of real estate development. Prior to 2008,

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

BySynergy was developing a 106 single-family home project in Arizona ("Property"). To help fund the venture, BySynergy obtained a $200,000 loan from Douglass Enterprises, which was evidenced by a note and a second-position deed of trust against the Property in favor of Douglass Enterprises. To further secure repayment of the debt, the Zitos executed a Personal Guarantee for the amounts owed to Douglass Enterprises under the note.

**B.      BySynergy bankruptcy case**

On June 25, 2008, BySynergy filed a chapter 11 bankruptcy case ("BySynergy Case"). BySynergy listed Jay Douglass, co-owner and manager of Douglass Enterprises, as the holder of a secured claim. Jay Douglass, on behalf of Douglass Enterprises, timely filed a $1,181,765.20 secured proof of claim related to the BySynergy note.

Shortly thereafter, the bankruptcy court granted stay relief to the senior lienholder on the Property. The senior lienholder completed a trustee's sale of its deed of trust encumbering the Property, leaving Douglass Enterprises with no proceeds from the sale and only an unsecured claim to pursue.

On December 17, 2008, Douglass Enterprises and Jay Douglass retained bankruptcy attorney Daniel P. Collins[2] to represent them in the BySynergy Case. Collins filed a notice of appearance in the BySynergy Case

---

[2] Mr. Collins was later appointed as a bankruptcy judge for the District of Arizona.

3

on behalf of the Douglass clients on January 8, 2009. Collins did not file any other documents in the BySynergy Case.

BySynergy later sought, unsuccessfully, to dismiss its case. A hearing on the dismissal motion was held on December 6, 2010, at the courthouse in Prescott, Arizona (the "Hearing"). Several parties appeared, including BySynergy attorney Harold Campbell, the attorneys for the Unsecured Creditors Committee ("UCC") and U.S. Trustee, and various creditors.

During a recess, several creditors attended a side meeting in a jury room at the Prescott courthouse (the "Meeting"). Campbell informed the attendees that he had been representing the Zitos in their personal chapter 11 bankruptcy case, already pending for over a year at the time of the Meeting. Campbell's Application to Employ Attorneys for Limited Appearance for Motion to Dismiss and Rule 2014 Statement of Proposed Attorneys for Debtor filed in the BySynergy Case on December 7, 2010 ("Employment Application") also noted his dual representation of the Zitos in their individual case. The Employment Application was served on the U.S. Trustee and counsel for the UCC.

Another dismissal hearing in the BySynergy Case was scheduled for April 27, 2011. In a notice to continue that hearing ("April 27, 2011 Notice"), Campbell again disclosed that he was also representing the Zitos in their personal bankruptcy case. The April 27, 2011 Notice was served on the U.S. Trustee and counsel for the UCC.

Ultimately, the BySynergy Case was converted to chapter 7 in November 2011; the unsecured creditors received nothing in the case. Collins received notice of the case's conversion on December 6, 2011. His notes from that date indicate that he asked a firm employee to determine if the firm had ever filed a proof of claim on behalf of the Douglass clients.

## C.  The Zitos' personal bankruptcy case

Meanwhile, on October 13, 2009, the Zitos filed, pro se, an individual chapter 11 bankruptcy case ("Zito Case"). They did not list Douglass Enterprises, Jay Douglass or the Personal Guarantee debt on their bankruptcy schedules. The Zitos maintained that they inadvertently left out of their personal bankruptcy schedules any debts related to BySynergy's liabilities. The last date for filing proofs of claims in the Zito Case was December 8, 2011.[3]

The bankruptcy court confirmed the Zitos' plan of reorganization on February 2, 2012, which provided a 100% payment to unsecured creditors, and on October 9, 2012, the court entered the Final Decree and Discharge Order. The Zitos did not provide copies of or notice to Douglass Enterprises of the claims bar date, the disclosure statement hearing, the disclosure statement order, the plan or plan confirmation order, or any

---

[3] The bankruptcy court noted that the claims bar date in the Zito Case was August 12, 2011. This conflicts with the parties' position that the claims bar date was December 8, 2011. In any case, if Collins's representation of the Douglass clients ended in February 2010, this was long before either date.

other filing in the case prior to August 16, 2013 — the day the Zitos sought to reopen the Zito Case.

**D.     The Zitos' motion for determination**

On April 8, 2013, state court counsel for Douglass Enterprises sent a letter to the Zitos demanding payment of the $1.6 million then owed on the BySynergy note. If they did not pay, Douglass Enterprises would pursue its remedies in state court.

Two days later, Mr. Zito sent a series of emails ("April 2013 Emails") to several individuals, including BySynergy employees and personal friends, Steven Bernard and James Hofbauer, expressing his concerns over the demand letter. In the April 2013 Emails, Mr. Zito stated:

> Betty and I were served with a massive lawsuit for $2,000,000 from a creditor, Douglass Enterprises, a BySynergy creditor. It's a very problematic lawsuit, because Betty and I are being sued as 'Guarantors' of a $170,000 obligation signed by BySynergy back in March of 2007. That debt and all other debts were legally extinguished in the BySynergy Ch. 7 BK in May of 2012. But, still this guy are (sic) claiming that he is owed default interest of 100% per annum compounded on $170,000, so the amount I owe is today $2,070,000.
>
> He is claiming that since he did not know I was in BK, he therefore could not file a claim, his debt was NOT discharged, and Betty and I still owe him the money. . . .
>
> This has big implications for us because, as sole Manager of all our companies, I have a legal obligation to disclose this kind of

6

stuff back east, and that could probably delay funding, after I sign the stock purchase agreement. If I am compromised, so is (sic) our companies.

Here are the key points under consideration:
. . .
3. A creditor, if aware of a BK affecting his obligation, has a legal duty to file a claim in that BK court, in a timely manner. Failure to do so, especially months after the BK was discharged, is bad for him and good for us. The guy did file a timely claim with the BySynergy BK court, so he absolutely knew about my BK, because both BK cases were before the same judge, and more often than not, hearings for both were held on the same day. So, he cannot claim he did not know about my BK.

4. . . . The judge will not allow any creditor of BySynergy to claim they did not know of my personal BK.

After Douglass Enterprises filed suit against the Zitos in state court for breach of the Personal Guarantee, the Zitos moved to reopen the Zito Case so the bankruptcy court could determine whether the debt related to the Personal Guarantee had been discharged. Although Douglass Enterprises did not have formal notice of the Zito Case, the Zitos argued that it had actual knowledge and notice of it, because Jay Douglass had attended the Meeting on December 6, 2010, where attorney Campbell announced that he was also representing the Zitos in their personal bankruptcy case. Because the Meeting was approximately one year prior to the claim filing deadline, the Zitos argued that Douglass Enterprises had

7

sufficient time to file a proof of claim but failed to do so. As a result, argued the Zitos, the debt was discharged.

After the bankruptcy court reopened the Zito Case, the Zitos filed a motion for determination that the Personal Guarantee debt had been discharged. In addition to their argument that Douglass Enterprises gained actual knowledge of the Zito Case at the Meeting, the Zitos argued that Collins had notice of the Zito Case via the Employment Application and the April 27, 2011 Notice, wherein Campbell disclosed that he was also representing the Zitos in their personal bankruptcy case. The Zitos argued that Collins's knowledge of the Zito Case was imputed to Douglass Enterprises.

In opposition, Jay Douglass denied attending the Hearing or Meeting in Prescott and stated that he had never met any of the Zito declarants who claimed he was there. Jay Douglass maintained that on December 6, 2010, he was in Flagstaff, his city of residence, and that he had cell phone records and other evidence to prove it. Jay Douglass also maintained that neither the Employment Application nor the April 27, 2011 Notice was emailed or mailed to him, Collins or Douglass Enterprises.

E.     **Trial regarding notice and the bankruptcy court's decision**

The bankruptcy court held a trial on the issue of whether Douglass Enterprises had notice or actual knowledge of the Zito Case. Specifically, the issues were:  (1) whether Jay Douglass attended the Meeting on

December 6, 2010, in Prescott and learned or gained personal knowledge of the Zito Case; and (2) whether Collins's and Jay Douglass's alleged receipt of filings in the BySynergy Case that referenced the Zito Case gave notice of the Zito Case to Douglass Enterprises. Eleven witnesses testified. Ultimately, the court determined that the Zitos had not met their burden of establishing that Douglass Enterprises received legally sufficient and timely notice or knowledge of the Zito Case that would have allowed for the timely filing of a proof of claim. As a result, the Personal Guarantee debt was not discharged under § 523(a)(3)(A).

Specifically, the court found that the Zitos failed to establish that Jay Douglass attended the Meeting on December 6, 2010, in Prescott. While the court did not find the Zito witnesses' testimony deliberately untruthful, it could not give full credibility to the accuracy of their conflicting recollections of attendees at a meeting held nearly eight years ago. Other than agreeing that Jay Douglass was there, they could not provide consistent or detailed supporting recollections, such as how Jay Douglass was dressed, whether he arrived alone or with someone else at the Prescott courthouse on December 6, 2010, or where or if he was seated at the Meeting. The court specifically found that Zito witness, Sedona Junaid, "was not a fully credible witness." The court believed that perhaps Mr. Zito's April 2013 Emails to his testifying witnesses unintentionally implanted witness confusion between Jay Douglass's attendance at the

§ 341(a) meeting of creditors for the BySynergy Case and the Meeting.

Conversely, the court found Jay Douglass's testimony that he was not in Prescott on December 6, 2010, to be both logical and credible. It was further supported by documentary evidence of cell phone records, a credit card bill, an athletic club attendance record, and credible testimony of his assistant, his business partner, and a cellular phone forensics expert witness. It made no sense to the court that an experienced businessman like Jay Douglass, who previously understood and complied with requirements to file a proof of claim in the BySynergy Case, would fail to take that same action in the Zito Case had he known about it to protect the same claim. Overall, the court concluded that the strength of Douglass Enterprises's contrary evidence outweighed the "troubled testimony" presented by Mr. Zito and the Zito witnesses.

The court also found that Douglass Enterprises did not receive notice of the Zito Case through Collins's receipt of the Employment Application and the April 27, 2011 Notice. These documents were prepared and filed well past the February 23, 2010 date on which the court found that the Douglass clients and the Collins firm agreed to terminate legal representation. Collins had no legal duty to review any pleadings after that, and the court found his testimony that he did not review them to be both logical and credible. The court also found that the Zitos had not established that Douglass Enterprises was alerted on its own of the Zito

Case through the Employment Application or the April 27, 2011 Notice. Both documents were served only on the U.S. Trustee and counsel for the UCC. And nothing in the record established that the Bankruptcy Noticing Center served notice of either pleading on any other creditor or party.

Lastly, the court found that there was no nexus between Douglass Enterprises's retention of the Collins firm in the BySynergy Case to pursue the direct claim against BySynergy and Douglass Enterprises's guarantee claim against the Zitos personally, for which the firm was not retained. The fee agreement said nothing about the Zito Case or collecting on the Personal Guarantee. The firm's billings and representation of the Douglass clients concluded on February 23, 2010, and billings were only for the BySynergy Case; no time was billed for the Zito Case or any services relating to the Personal Guarantee. The legal representation concluded well before the Meeting, the submission of the pleadings mentioning the Zito Case, and the claims bar date in the Zito Case. Although Collins knew about the Personal Guarantee, the court found there was no evidence establishing that he had knowledge of the Zito Case. Nor was any evidence presented that he discussed the Zito Case with the Douglass clients.

The court entered a judgment in favor of Douglass Enterprises and against the Zitos ("Judgment"). This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and

11

157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.[4]

## III. ISSUE

Did the bankruptcy court err in determining that the Personal Guarantee debt was not discharged in the Zito Case under § 523(a)(3)(A)?

## IV. STANDARDS OF REVIEW

When reviewing a bankruptcy court's determination of an exception to discharge claim, we review its findings of fact for clear error and its conclusions of law de novo. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009). A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985); *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003); *Ng v. Farmer (In re Ng)*, 477 B.R. 118, 132 (9th Cir. BAP 2012). The deference owed to the bankruptcy court is heightened where its choice is based on the credibility of live witnesses. *Anderson*, 470 U.S. at 575.

---

[4] Douglass Enterprises argues that this appeal is moot because the bankruptcy court has since closed the Zito Case. It cites no authority for this proposition. To the contrary, the closing of the Zito Case has no effect on the viability of this appeal or the Panel's ability to grant relief. *See Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 905-06 (9th Cir. BAP 1999).

# V. DISCUSSION

**A.    The bankruptcy court did not err in determining that the Personal Guarantee debt was not discharged in the Zito Case.**

## 1.    Section 523(a)(3)(A)

Section 523(a)(3)(A)[5] governs the dischargeability of unscheduled debts. It excepts from discharge unscheduled debts that are not of the type described in § 523(a)(2), (a)(4) or (a)(6), where the creditor had no notice or actual knowledge of the case in time to file a timely proof of claim. § 523(a)(3)(A). *See also Mahakian v. William Maxwell Invs., LLC (In re Mahakian)*, 529 B.R. 268, 275 (9th Cir. BAP 2015) ("The language contained in § 523(a)(3)(A) is clear and not ambiguous:  a debt is excepted from discharge if the creditor was neither listed nor scheduled and did not otherwise know of the bankruptcy case in time to file a timely [proof of

---

[5] Section 523(a)(3)(A) provides, in pertinent part:

(a) A discharge under section . . . 1141 . . . of this title does not discharge an individual debtor from any debt —

(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit —

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing[.]

claim].").[6] Conversely, if the unscheduled creditor had notice or actual knowledge of the case in time to file a timely proof of claim but failed to act, then the debt is discharged. The burden of proof rests with the debtor to establish the "exception to the exception" by proving that the creditor had notice or actual knowledge of the bankruptcy. *Hill v. Smith*, 260 U.S. 592, 595 (1923); *see also Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 140-41 (9th Cir. BAP 1997).

"Notice to a creditor's attorney of a bankruptcy filing is usually sufficient if the attorney received knowledge of it while representing his client in enforcing a claim against the bankrupt." *Lompa v. Price*, 871 F.2d 97, 99 (9th Cir. 1989). However, once an attorney no longer represents a client, notice of such filing cannot be imputed to the former client. *Perle v. Fiero (In re Perle)*, BAP No. CC-10-1048-PaKiL, 2010 WL 6259964, at *8 (9th Cir. BAP Dec. 6, 2010), *aff'd*, 725 F.3d 1023 (9th Cir. 2013) ("The bankruptcy court had evidence that Russo had not represented Fiero in the NASD Arbitration for three years at the time of Perle's bankruptcy filing. Thus, information Russo might have obtained regarding Perle's bankruptcy was not within the 'scope and duration' of Russo's retention as Fiero's attorney in the NASD Arbitration Award, and such knowledge would not be imputed to

---

[6] The Ninth Circuit recognizes an exception to the operation of § 523(a)(3)(A) in no-asset cases (i.e., chapter 7) where no bar date has been set for filing proofs of claims. *See Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F.2d 1433 (1992). The Zito Case was an asset case, however.

Fiero.").

The Zitos did not schedule Douglass Enterprises or the Personal Guarantee debt in the Zito Case. Thus, in order for the debt to have been discharged, the Zitos had to prove that Douglass Enterprises had notice or actual knowledge of the Zito Case in time to file a timely proof of claim. The bankruptcy court found that the Zitos failed to meet their burden of proof on that issue.

**2.     Analysis**

The Zitos assign a number of errors to the bankruptcy court's decision regarding notice. They primarily contest only the court's findings of fact. We address each of their arguments in turn.

First, the Zitos assert that the bankruptcy court improperly impeached their witnesses' testimony by considering inconsistent statements as substantive evidence. We disagree. The court was free to consider such statements as substantive evidence under Fed. R. Evid. 801(d)(1)(A).[7] The Zitos' reliance on an Arizona criminal case applying the

---

[7]  Fed. R. Evid. 801(d)(1)(A) provides:

(d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:

(1) A Declarant-Witness' Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:

(continued...)

15

Arizona Rules of Evidence is misplaced. Arizona evidence rules are not applicable to a federal proceeding.

Douglass Enterprises deposed the Zito witnesses prior to trial and referenced their prior statements made under oath when testing their trial testimony. Trial testimony showed that their accounts of the December 6, 2010 Hearing and Meeting were not only inconsistent with their own deposition testimony, but their testimony also was inconsistent with each other. Other than agreeing that Jay Douglass was in attendance at the Meeting and did not speak, they provided inconsistent accounts as to who rode in the car to Prescott with Mr. Zito that day, whether Jay Douglass came alone or with a colleague to the Prescott courthouse, whether he sat or stood at the Meeting, whether there was a break for lunch or if the Zito witnesses went to lunch, and what time the events of that day ended. Contrary to the Zitos' contention, the court did not rely solely on the fact that no one could remember what Jay Douglass was wearing that day to conclude that the Zito witnesses' testimony was not reliable or, in some cases, credible.

As the trier of fact, the bankruptcy court weighed the evidence presented and found that the Zito witnesses were not as reliable and

---

[7](...continued)
> (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition[.]

credible as the witnesses for Douglass Enterprises. We cannot conclude that the court's findings as to the reliability and credibility of the witnesses were illogical, implausible or without support in the record.

Second, the Zitos take issue with the bankruptcy court's belief that the April 2013 Emails unintentionally implanted witness confusion between the Meeting and the § 341(a) meeting Jay Douglass said he attended. They maintain that this belief was not supported by any extrinsic evidence such as expert psychological testimony. No "extrinsic" evidence such as the Zitos suggest was necessary for the court's reasonable inference that the Zito witnesses may have been confused about Jay Douglass's attendance at the Meeting in light of the April 2013 Emails and their content. The court's inference is further supported by the Zito witnesses' inconsistent testimony as noted.

Third, the Zitos argue that the bankruptcy court erred by applying a double standard when considering each party's self-interest. Precisely, the Zitos take issue with the court's conclusion that Mr. Zito had a "clear personal incentive to convince himself he recalls such attendance (by Jay Douglass at the Meeting) to avoid the very appreciable injury of a seven-figure claim being held non-dischargeable," but yet the court did not apply this same standard to the witnesses for Douglass Enterprises. Each party's self-interest was obvious and recognized by the court:  the Zitos wanted the Personal Guarantee debt to be declared discharged; Douglass Enterprises

did not. The court did not, as the Zitos suggest, apply a double standard. After examining the evidence, it simply found the testimony and documentary evidence presented by Douglass Enterprises to be logical and more credible. We reject the Zitos' additional argument that it was illogical or implausible for the court to assume that they were worried about the Personal Guarantee debt. Of course they were. In any case, any defenses they have in the breach of contract litigation are fully preserved and can be asserted in the state court.

Fourth, the Zitos contend the bankruptcy court erred in concluding that they did not meet their burden of proof to establish that Douglass Enterprises received notice of the Zito Case through Collins. They argue that "no proof" was presented at trial that Collins's representation of the Douglass clients ended on February 23, 2010. To the contrary, both Jay Douglass and Collins testified to this fact. Their testimony was further supported by the billing records from the Collins firm, which showed that the last day Collins did any work on the BySynergy Case was February 23, 2010. The fact that Collins did not file a notice of withdrawal in the BySynergy Case did not negate the men's testimony that the attorney-client relationship ended on February 23, 2010.

The Zitos' speculation that the representation ended on some other date is merely that — speculation. Mr. Zito conceded at trial he had no evidence that Collins or any other attorney appeared for the Douglass

18

clients after that date. Accordingly, with Collins no longer representing the Douglass clients after February 23, 2010, notice of the Zito Case from his alleged receipt of any subsequent BySynergy filings, such as the Employment Application and the April 27, 2011 Notice, could not be imputed to Douglass Enterprises.

The Zitos also take issue with the bankruptcy court's conclusion that a nexus did not exist between the Douglass clients' retention of Collins to protect the BySynergy claim in the BySynergy Case and the Personal Guarantee claim. Douglass Enterprises had argued that notice to creditor's counsel is presumed to satisfy both bankruptcy and due process notice requirements as to the creditor only "so long as there is a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor." *Vicenty v. Sandoval (In re Sandoval)*, 327 B.R. 493, 508 (1st Cir. BAP 2005). The Zitos argue that there can be no doubt that a nexus existed here, because the two claims derived from the same transaction.

Although it is true that the two claims arose out of the same transaction, the evidence at trial was:  (1) the fee agreement showed that the scope of Collins's representation was to protect the BySynergy claim in the BySynergy Case; (2) the firm's billing records showed no evidence of any work done for the Personal Guarantee; (3) Collins testified that he did no work regarding the Personal Guarantee; and (4) Jay Douglass testified that he did not hire Collins to pursue the Personal Guarantee, because a

less expensive, non-bankruptcy attorney could pursue that claim. While Collins knew about the Personal Guarantee, the court concluded based on the undisputed evidence that no nexus existed "between Creditor's retention of the firm in the corporate case to pursue the direct claim against BySynergy and Creditor's guarantee claim against the Zitos personally, for which the firm was not retained." Even assuming the requirement of a "nexus" is the law in this circuit, we see no error in the bankruptcy court's determination.[8]

Fifth, the Zitos spend a great deal of time quibbling about the quality of evidence that was presented (or evidence that Douglass Enterprises failed to present) on Jay Douglass's whereabouts on December 6, 2010, and argue that the bankruptcy court erred in concluding that he did not attend the Meeting in Prescott. Again, as the trier of fact, the court weighed the evidence presented and found that the Zitos had not established by a preponderance of the evidence that Jay Douglass attended the Meeting. When multiple plausible views of the evidence are possible, the court's choice among them cannot be clearly erroneous. *Anderson*, 470 U.S. at 573-75. Even if the Zitos were correct that the court misconstrued the evidence and Jay Douglass was at the Meeting, they presented no evidence

---

[8] The Zitos' reliance on *Noland Co. v. Graver Tank & Manufacturing Co.*, 301 F.2d 43 (4th Cir. 1962), and *Schwab v. Erie Lackawanna Railroad Co.*, 438 F.2d 62 (3d Cir. 1971), is misplaced. Neither case involved the issue of a creditor's retention of an attorney and the creditor's claim against a debtor.

establishing that he learned or gained knowledge of the Zito Case there.[9] The Zitos also fail to explain why they never amended their schedules to include Douglass Enterprises and the Personal Guarantee debt. *See, e.g., Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001) (a debtor is under a continuing duty to amend his or her bankruptcy schedules and statement of financial affairs).

Lastly, the Zitos argue that Douglass Enterprises inequitably delayed enforcement of the Personal Guarantee. This has no relevance to the issue that was before the bankruptcy court, but might be something for the state court to consider. In any event, the Zitos do not contest that the claim of Douglass Enterprises is subject to a six-year statute of limitations, and that the breach of contract action was filed within that limitation. *See* A.R.S. § 12-548 (Contract in writing — "An action for debt shall be commenced and prosecuted within six years after the cause of action accrues . . . ."). In addition, Jay Douglass explained his reasons for why he did not sue the Zitos right away, which the bankruptcy court found to be credible.

## VI. CONCLUSION

In summary, the Zitos had a duty to list Douglass Enterprises and the

---

[9] To the extent the Zitos argue that the evidence presented by Douglass Enterprises was hearsay, we decline to consider this argument since it was never raised before the bankruptcy court. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("As a general rule, we will not consider arguments that are raised for the first time on appeal.").

Personal Guarantee in their schedules. When they failed to do that, they had the burden under § 523(a)(3)(A) to prove that Douglass Enterprises had notice or actual knowledge of the Zito Case in time for it to file a timely proof of claim. They did not do so. As the bankruptcy court correctly observed, given Jay Douglass's timely participation in the BySynergy Case, it defies logic that he chose not to participate in the Zito Case if he in fact had notice of it. Seeing no error by the bankruptcy court, we AFFIRM the Judgment.